72640. ALBERT v. THE STATE.
(350 SE2d 490)

BEASLEY, Judge.

In February of 1979 appellant Claude W. Albert, Jr. was tried and convicted of two counts of aggravated assault, armed robbery, attempted armed robbery, attempted rape, two counts of kidnapping, kidnapping with bodily injury and possession of a firearm during the commission of a crime, all of which arose from a single assault on a teenage couple. The sole defense presented at trial by appellant was expert testimony that he was suffering from schizophrenia and was thus legally insane at the time of the incident. Upon appeal to this court the conviction was affirmed in *Albert v. State*, 152 Ga. App. 708 (263 SE2d 685) (1979). The Georgia Supreme Court denied application for certiorari and appellant's petition for writ of habeas corpus was dismissed by the federal district court. Upon appeal of that dismissal, the Eleventh Circuit Court of Appeals reversed the conviction, holding that the admission of evidence at trial of a prior offense for

which appellant was tried and acquitted violated the Fifth Amendment guarantee against double jeopardy so as to constitute reversible error, and remanded the case for retrial at the State's discretion. *Albert v. Montgomery*, 732 F2d 865 (11th Cir. 1984).

At the second trial in October 1984, appellant denied any participation in the incident on which the charges were based. The state presented evidence that at about 10:30 on the evening in question the two victims, Sandra and Anthony, drove to a dirt road in an undeveloped area where they parked. About five minutes after their arrival a white van drove by, and a short time later an armed man approached the driver's side of Anthony's car and demanded money. The man was wearing a tee shirt, blue jeans, boots, yellow gloves similar to Playtex dishwashing gloves, and a pair of women's underpants over his head as a mask. When Anthony blew the horn on his car and he and Sandra began to scream, the assailant told them to be quiet or he would shoot them. After Anthony gave him a ten dollar bill, the man ordered him out of the car, slapped him and forced him at gunpoint into the trunk, stating that he was going to rape Sandra. The assailant forced Sandra into the back seat and drove Anthony's car further down the dirt road until he reached a clearing in the woods, where he ordered Sandra to remove her clothes because he was going to rape her. When she resisted he cursed and beat her, threatening both her and Anthony with a slow death. Sandra became hysterical when the assailant put his pistol to her head, and he struck her on the head with the butt several times. As she wiped away the blood covering her face, he started to get out of the car, telling her "he was going to go finish Anthony." Sandra kicked the back seat forward causing him to fall to the ground, then got out of the car and began wrestling with him for the gun, which had been dropped. As she scratched and clawed the assailant, dislodging the underwear, Sandra was able to see his face. While he tried to replace it and recover the gun, she ran to the trunk of the car and released Anthony. The assailant told them to go into the woods and he would leave their car for them. They fled into the woods but did not return for the car, seeking help at a friend's house instead and notifying the police.

Appellant had been arrested, tried and acquitted of an attempted armed robbery two years previously, and a detective who had been involved in that case told the investigators in the instant case that the description of Sandra and Anthony's assailant fit that of appellant who, the detective said, had been accused of a similar crime. Thus, the investigators arranged for Sandra and Anthony, accompanied by sheriff's deputies to drive around town looking for vans similar to the one they had described. The sheriff intentionally drove them past appellant's house where a white van was parked in his driveway which the victims said "looked a lot like" the van they had seen before they

were attacked. At the same time the sheriff's daughter and another deputy went to appellant's home under the pretext of buying a dog from him. (Appellant owned several pet stores.) As the victims were driven past the house a second time, appellant appeared at the front door and Sandra immediately identified him as their assailant. Anthony apparently did not see him. Appellant was arrested shortly thereafter and on the same afternoon, dressed in the same clothes but with the sheriff's shirt covering his distinctly marked tee shirt, he was placed in a line-up where he was separately identified by both Sandra and Anthony as their assailant. Later the same day the police authorities searched appellant's home and confiscated a tee shirt, a pair of blue jeans, work boots and an Italian Beretta automatic pistol. They also took photographs of the tires on his van and photographed and cast tire and shoe impressions at the crime scene. The appellant submitted no evidence and the jury returned a verdict of guilty on four counts: kidnapping, kidnapping with bodily injury, aggravated assault and possession of a firearm during the commission of a crime.

1. Appellant's first three enumerations of error challenge the weight and sufficiency of the evidence and the legality of the verdict on the general grounds. Viewing the evidence in the light most favorable to the prosecution, we find it was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the offenses for which he was convicted. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Fluellen v. State*, 253 Ga. 285 (319 SE2d 451) (1984); *Jones v. State*, 177 Ga. App. 531 (1) (339 SE2d 786) (1986); *Tims v. State*, 168 Ga. App. 409 (1) (309 SE2d 405) (1983).

2. Appellant made a pretrial motion for funds to hire an investigator and expert witnesses, contending that this was necessary to challenge the state's expert testimony in regard to blood from clothing and fingernail scrapings and the tire and boot casts. At a hearing held on a motion for disclosure, the prosecutor had revealed that all the physical evidence from the case had been lost when the courthouse was remodeled between trials, except for photographs of the boot and tire impressions, and that she did not intend to introduce the photographs of the tire impressions because "they were pictures of the tires of the wrong van." Thus appellant argued that it was crucial to his defense that dissimilarities in the shoe or boot impression photographs be pointed out, as this was "the one piece of critical physical evidence that [tied] him in in any way."

The trial court denied the motion on the grounds that there was little physical evidence left to examine, that any questions as to dissimilarity could be raised by cross-examination, and that this evidence was at best only corroborative and did not add significant weight to the state's case. At trial, the state did introduce the photo-

graphs of the tire impressions. On cross-examination of the officer who examined the casts of the tire tracks and photographs of the tires, when defense counsel asked if it had been determined that the tracks had not been made by appellant's van, the officer answered that no such determination had been made. He explained that while the tread design was "very similar," the cast they made "did not turn out sufficient enough to have the Crime Lab comparison made." Defense counsel moved for mistrial, which was denied, and again requested a continuance and funds to hire an expert to examine the photographs. Denial of these motions is enumerated as error.

The Supreme Court established in *Sabel v. State*, 248 Ga. 10, 17-18 (6) (282 SE2d 61) (1981) that "[a] criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion." However, the Supreme Court has declined "to extend *Sabel* to the examination of photographs unless there is some showing that an expert analysis of the photographs relates to a critical matter which is subject to varying expert opinion. It is not enough to assert that expert analysis might produce evidence helpful to the defense, i.e., to embark on a 'fishing expedition.' " *Sims v. State*, 251 Ga. 877, 880 (4) (c) (311 SE2d 161) (1984). We agree with the trial court that these photographs were at best cumulative evidence and, in light of the poor quality of the tire track casts, unlikely to produce any evidence helpful to appellant. Compare *Carpenter v. State*, 167 Ga. App. 634 (1) (307 SE2d 19) (1983).

3. Appellant also filed a pretrial motion to bar testimony of the physical evidentiary items that were lost or destroyed between the two trials on the ground that he was thereby denied access to exculpatory evidence in violation of his right to a fair trial. He claims reversible error in the denial of this motion because his opportunity to raise an effective defense was severely curtailed through actions of the prosecution. Specifically, appellant argues that the missing items of clothing seized from his home "most likely would have produced a not guilty verdict," because he could have called attention to the fact that they were not soiled, ripped or blood-stained as could be expected after struggling or fighting on the ground; but that destruction of the clothing made it impossible for him to refute the prosecutor's remarks during closing argument that the reason there were no stains was because the items had been washed.

In *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984), the United States Supreme Court set down certain standards for determining whether the destruction of physical evidence amounted to a constitutional violation. First, it must be shown that the evidence was not destroyed "in a calculated effort to circumvent

the disclosure requirements established by *Brady v. Maryland* and its progeny." 467 U. S. 488. While there was testimony here that the evidence was disposed of under court order by court personnel, it was apparently destroyed during renovation of the courthouse or in an effort to clean out exhibits from cases that had been "finalized." In either event, its destruction was unconnected with the activities of the prosecution in the instant case and certainly not a calculated effort to circumvent the disclosure requirements.

Further, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [cit.], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Ibid. In our view, it is remote that introduction of the casts or the clothing and gloves taken from appellant's home would have been exculpatory. Here, as in *Trombetta*, there has been no showing of "official animus towards [appellant] or of a conscious effort to suppress exculpatory evidence." Ibid. We find no basis for reversal on this ground. Accord *United States v. Webster*, 750 F2d 307 (5th Cir. 1984).

4. In his pretrial motion for disclosure appellant also requested statements of the victims which were given investigators shortly after the incident. At the hearing on the motion defense counsel argued that these statements were exculpatory in that there were discrepancies and contradictions between them and the victims' previous trial testimony, such as failing to mention or describe the van, whether the assailant's mask was completely or partially removed and his weight, height and general appearance. After an in camera inspection, the trial court determined that appellant was not entitled to these statements or the officer's notes under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). At trial, following testimony on the taking of these statements, appellant renewed his request for the officer's notes and the court again ruled that appellant had been given everything he was entitled to see as a matter of right. Defense counsel then conducted cross-examination of this officer without any inquiry as to possible discrepancies.

Appellant asserts that the purported inconsistencies "could very well have created enough doubt in the minds of the jurors to cause them to reach a different verdict." However, "speculation (of dubious plausibility)" is insufficient to invoke a *Brady* violation. See *Parks v. State*, 254 Ga. 403, 408 (3) (330 SE2d 686) (1985). "Appellant has not shown that any exculpatory statement was suppressed, and has not met his burden of proof on appeal of showing both the materiality

and the favorable nature of the evidence sought. Mere speculation that the items appellant wishes to review might contain exculpatory information does not meet this burden. [Cit.]" *Wells v. State*, 177 Ga. App. 419, 420 (1) (339 SE2d 392) (1986). "*Brady* cannot be read as requiring that 'as a matter of constitutional law everything must be disclosed which might influence a jury.' [Cit.]" *Castell v. State*, 250 Ga. 776, 782 (2) (301 SE2d 234) (1983).

5. Appellant's enumerations 7 and 8 involve his efforts to reargue issues raised in the first trial concerning the legitimacy of the pre-arrest identification by Sandra leading to his arrest and seizure of evidence, and the line-up identification by both victims, which were affirmed on appeal both by this court (*Albert v. State*, 152 Ga. App. at 709 (2), supra) and the Eleventh Circuit Court of Appeals (*Albert v. Montgomery*, 732 F2d at 871, supra). As such, the trial court correctly barred their relitigation upon the state's plea of res judicata. "[E]ven where a plea of former jeopardy is not available, a criminal judgment is res judicata of every fact in issue which is actually or necessarily adjudicated by that judgment. [Cit.]" *Lindsey v. State*, 227 Ga. 48, 52 (2) (178 SE2d 848) (1970).

6. After presenting its last witness, the state outside the presence of the jury requested that certain remarks made by defense counsel during opening and closing arguments in the first trial in the context of appellant's insanity plea be read to the jury. The prosecutor contended that these remarks constituted admissions of the defendant. Appellant's attorney, who did not represent him in the first case, argued against reading these remarks, stating that if the court ruled otherwise the defense would be "deprived of the right to defend the case before the jury." The trial judge did not allow the evidence to be introduced at that time, but stated that it might be allowed as rebuttal depending on what evidence the defense put up.

Appellant contends that the insanity defense at the first trial was utilized only to counter the state's "trumped up" case in a hopeless situation created by erroneously admitting evidence of the prior acquittal over strenuous objection; and that once the trial court ruled that it might allow these admissions of counsel to be read to the jury, the present trial counsel was forced to choose between putting up witnesses and evidence and having to face the prejudicial statements, or foregoing the presentation of witnesses and evidence to avoid their admission in rebuttal. Appellant asserts he was thus forced to choose between two constitutional rights: the right to present witnesses and testify in his own behalf, and the right to effective assistance of counsel; and that consequently both rights were infringed upon.

We do not find this argument compelling. First, such "admissions" are not ipso facto inadmissible. See, e.g., *134 Baker Street, Inc. v. State*, 172 Ga. App. 738 (5) (324 SE2d 575) (1984); *Chester v.*

*State*, 162 Ga. App. 10 (7) (290 SE2d 117) (1982); *Bell v. State*, 129 Ga. App. 783 (6) (201 SE2d 340) (1973). Second, the statements of counsel objected to here were never allowed in evidence, nor did the court rule that they would be allowed in rebuttal; thus appellant fails to show how he was "improperly pressured" or "indirectly threatened" by the actions of the trial court or the state. In an analogous context, appellant could not complain because the state *might* introduce illegal prior convictions if he put up evidence of good character or took the stand in his own defense, where this did not in fact occur. Compare *Golden v. State*, 177 Ga. App. 747 (341 SE2d 480) (1986).

Finally, appellant has not established how he was harmed by electing to present no further evidence. "[E]vidence that someone else might have committed the crime, which does not dispute the identification at trial, is insufficient. [Cits.] Further . . . testimony . . . would be merely cumulative in that it goes to the issue of alibi and mistaken identity, and would only serve to impeach the credibility of the victim insofar as her positive identification of the defendant . . . is concerned [Cit.]" *Tims v. State*, 168 Ga. App. 409, 412 (2), supra. Even constitutional error is considered harmless if there is no "reasonable possibility" it might have contributed to the conviction: " 'Overwhelming evidence of the defendant's guilt can negate the possibility that the constitutional error contributed to the conviction. [Cit.]' [Cit.] Consequently, any error committed . . . was harmless." *Chambley v. State*, 177 Ga. App. 630, 631 (1) (340 SE2d 635) (1986).

7. In his tenth enumeration appellant complains that the trial court erred in denying his motion for mistrial and request for a continuance after the defense was surprised by the introduction of "new and illegal" evidence through misconduct of the prosecution and testimony of the officer concerning the photographs taken of the van and tire tracks, which he had been led to believe were "pictures of the wrong van." The answer of this witness, that the tire tracks and photographs were "very similar" but not sufficient to have a Crime Lab comparison made, does not impress us as being either particularly surprising or prejudicial; it certainly does not appear to be the result of any deliberate attempt to mislead or other prosecutorial misconduct. In any event, as discussed in Division 2, supra, in regard to the request for a continuance, this was at best cumulative evidence and not critical to establishing the commission of the crime. "In the absence of a demonstration that a mistrial was essential to preservation of appellant's right to a fair trial, it is not an abuse of discretion to deny a motion for a mistrial, even in the absence of curative instructions. [Cit.] Under the circumstances of this case, including the overwhelming evidence of appellant's guilt, we find no abuse of discretion." *Little v. State*, 178 Ga. App. 268, 270 (2) (342 SE2d 712)

(1986).

8. Appellant assigns error in the trial court's requiring the jury to deliberate almost ten hours when they had twice informed the court they were deadlocked. Appellant concedes that "[t]he determination as to whether the jury is in fact hopelessly deadlocked is a matter 'somewhat in the discretion' of the trial court. [Cit.]" *Glass v. State*, 250 Ga. 736, 738 (2) (300 SE2d 812) (1983). He argues, however, since the announced six-to-six division of the jury at the end of the first five hours of deliberation indicated that unanimity was unlikely, that compelling further deliberations "tended to run contrary to [his] interests" and resulted in a "compromise verdict."

"When the trial court is informed of a deadlock, the following are among the steps to be taken in deciding whether to order a mistrial or to require the jury to deliberate further: (1) polling the jurors or questioning them as a group to determine whether additional time would be helpful; (2) considering whether the jury is so exhausted that the free will of the minority might be overcome; (3) considering the length of the trial and the complexity of the case; and (4) considering the length of time the jury has deliberated. *Thornton v. State*, 145 Ga. App. 793 (245 SE2d 22) (1978)." *Dowdy v. State*, 169 Ga. App. 14, 17 (5) (311 SE2d 184) (1983). The trial here lasted several days and involved an eight-count indictment alleging crimes and evidence that were over six years old, the complexity of which was recognized by the trial court in discussion with the foreman. The court, in compliance with *Thornton*, considered how long the jury had deliberated before announcing they were deadlocked, and polled the jurors. There was no indication that any jurors were so exhausted they might be forced to vote against their convictions. Accordingly, "[w]e find no abuse of discretion in the trial court's refusal to order a mistrial in lieu of requiring the jury to deliberate further." *Dowdy*, supra. Accord *Curry v. State*, 175 Ga. App. 758 (3) (334 SE2d 356) (1985); *Caldwell v. State*, 167 Ga. App. 692 (5) (307 SE2d 511) (1983).

9. Appellant's contention that his plea in abatement as to count four of the indictment was erroneously denied because of the alleged unconstitutionality of OCGA § 16-5-40 has been considered by the Supreme Court and decided adversely to him. "That [OCGA § 16-5-40] does not define 'bodily injury' does not render that portion of the statute punishing kidnapping with bodily injury unconstitutionally vague. [Cit.]" *Waters v. State*, 248 Ga. 355, 367 (10) (283 SE2d 238) (1981); cert. den. 463 U. S. 1213 (103 SC 3551, 77 LE2d 1398) (1983). *Waters* relies on *Peek v. State*, 239 Ga. 422 (4) (238 SE2d 12) (1977), and *Peek* relies on *Coker v. State*, 234 Ga. 555, 558 (216 SE2d 782) (1975). *Coker* upheld the statute as not "being unconstitutionally vague, indefinite, discretionary and overbroad so as to violate due process and equal protection clauses of the Georgia and United States

Constitutions."

10. Appellant's argument that OCGA § 16-5-40 (b) violates the Eighth Amendment prohibition against cruel and unusual punishment because it provides for a life sentence in the event there is any bodily injury, regardless of the severity of the injury, is without citation of supporting authority and not persuasive. The statute recognizes three categories of kidnapping and sets the sentences for each. See *Allen v. State*, 233 Ga. 200 (3) (210 SE2d 680) (1974). The sentence for kidnapping with bodily injury is death or life imprisonment. OCGA § 16-5-40 (b); *Jarrell v. Zant*, 248 Ga. 492 (2) (284 SE2d 17) (1981). "Courts should not substitute their judgments as to the appropriateness of criminal penalties for those lawfully expressed by the General Assembly. It is only when criminal sanctions fail constitutional standards that the judiciary may concern itself with the substance of sanctions." *Means v. State*, 255 Ga. 537, 538 (1) (340 SE2d 612) (1986). Since the constitutionality of the statute has been upheld (*Waters*, supra), this enumeration is without merit.

11. Our review of the trial transcript reveals no "continuous, contemptuous prosecutorial misconduct" on the part of the state for the reasons asserted by appellant so as to warrant reversal. .

12. It follows that there was no error in the denial of appellant's motion for new trial based upon the enumerations of error heretofore considered.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 7, 1986.

Claude W. Albert, Jr., *pro se.*

*G. Theron Finlayson, District Attorney, Edward D. Lukemire, Assistant District Attorney*, for appellee.