## A01A0324. DUNN v. THE STATE.
### (546 SE2d 27)

ELDRIDGE, Judge.

A Murray County jury found Michael Lynn Dunn guilty of criminal attempt to commit armed robbery, conspiracy to commit armed robbery, and conspiracy to possess marijuana — more than an ounce. At sentencing, the trial court merged the criminal attempt count into the offense of conspiracy to commit armed robbery. Challenging the sufficiency of the evidence against him, Dunn contends the State (1) failed to prove the elements of conspiracy to commit armed robbery, and (2) failed to prove that the weight of the marijuana in question was more than an ounce. We disagree and affirm Dunn's conviction.

Dunn was indicted along with four other co-defendants. Three of the co-defendants pled guilty prior to trial and testified against Dunn. The evidence established, inter alia, that one of Dunn's co-defendants sold marijuana for the victim and knew he "had large quantities of marijuana in his house." Knowing this, Dunn and the other co-defendants planned "to steal [the victim's] drugs, his marijuana."

In furtherance of this plan, Dunn and the other co-defendants drove to a locale outside the victim's trailer park in the early morning hours of December 1, 1999. He and two of the co-defendants hiked "a pretty long way" to the victim's trailer. They approached the trailer wearing ski masks and gloves. They were armed with "a pistol apiece." Specifically, Dunn was carrying a .380 automatic pistol and was wearing a camouflage mask and gloves. The men cut the victim's telephone wires and "popped" out the porch light.

Apparently nervous about whether to go through with the robbery, Dunn and his two companions left the trailer and hiked back to the car. The five co-defendants then drove into the driveway of a house belonging to the parents of one of the co-defendants. Dunn and the others argued about whether to go through with the plan. Eventually, Dunn and two of the co-defendants went to the store for cigarettes. When they returned, it was resolved that they would all return to the victim's residence.

The five drove to the same locale outside the victim's trailer

park. Dunn and the two co-defendants who had gone to the victim's residence during the first attempt got out of the car. "[A]nd [Dunn] . . . said that he didn't want to go back down there, and he passed the .380 to [another co-defendant]. . . . He said he couldn't make the run or the walk or whatever." Dunn also gave a co-defendant the camouflage gear he was wearing during the first attempt.

The two co-defendants hiked back to the victim's trailer and entered the home through a window that they broke out with a piece of wood. The victim heard them. He let his Rottweiler dog loose on the intruders. The co-defendants shot the dog and fired three more shots at the victim in rapid succession. The victim was hit twice. He died from gunshot wounds to the body.

The two co-defendants ran back to the car. Out of breath, they told the occupants to "go, drive." Thereafter, "we got a little way down the road and I [co-defendant] said, 'He's dead, man, you know. He's dead.' And then everybody was just kind of quiet and then everybody was conversating about it, you know, and what we was going to do." The guns, gloves, and masks were hidden in a clothes dryer. The co-defendants' "conversating" did not include a conversation with law enforcement about what had occurred until a week later, when an intensive investigation surrounding the victim's death eventually led to interviews with each of them. After statements were taken and investigated, the five were arrested and charged accordingly. A search of the victim's home immediately following the homicide revealed a quantity of marijuana in a bedroom nightstand. A stipulation signed by all parties was put before the jury during trial which specified the weight of the marijuana as 125.6 grams or 28.35 ounces. *Held*:

We evaluate Dunn's challenge to the sufficiency of the evidence under the standard of *Jackson v. Virginia*,[1] construing the evidence in the light most favorable to the verdict. We do not weigh the evidence or determine the credibility of the witnesses. As long as some competent evidence, even though contradicted, supports each element of the State's case, we must affirm the judgment on the jury's verdict.[2]

1. A participant to a crime may be convicted although he is not the person who directly commits the crime.[3]

> A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be con-

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Glore v. State*, 241 Ga. App. 646 (1) (526 SE2d 630) (1999).

[3] OCGA § 16-2-20.

victed of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. Whether [Dunn] was a party to the crime and aided and abetted his co-defendants in the crimes for which he was indicted or intentionally advised, encouraged, or counseled his co-defendants to commit the crimes was a question for the jury.[4]

Here, the evidence established that Dunn was involved in the initial plan to commit armed robbery at the victim's residence and take marijuana therefrom; that Dunn directly participated in the first attempt to commit armed robbery at the victim's residence; that he returned to the locale near the victim's residence with his co-defendants, knowing that an armed robbery was again going to be attempted; that he furnished his own weapon, mask, and gloves to one of the co-defendants who was to perpetrate the armed robbery; that he remained at the car awaiting the return of the perpetrators and the anticipated fruits of the armed robbery; and that, thereafter, he did not reveal the commission of the offenses to law enforcement. We find this evidence sufficient for a rational trier of fact to find Dunn guilty beyond a reasonable doubt as a party to the crime of conspiracy to commit armed robbery.

2. Even while acknowledging the fact that the parties stipulated to the weight of the marijuana found in the victim's nightstand as 28.35 ounces, Dunn contends that "the State failed to present evidence to demonstrate the quantity of marijuana *sought to be possessed* [by the co-defendants] was greater than one ounce in weight." (Emphasis supplied.) This argument is premised on the fact that the co-defendants who testified against Dunn established only that the group's plan was to steal the victim's marijuana, and no specific amount of marijuana was mentioned.

Dunn's contention, then, encompasses the notion that the perpetrators would break into the victim's residence; engage the victim's Rottweiler dog; place the victim at gunpoint; demand his marijuana; and then deliberately cull through the 28.35 ounces of marijuana in order to remove less than an ounce before effectuating their escape. However, we find that a rational trier of fact could infer from the group's knowledge that the victim kept "large quantities of marijuana in his house," and from their general plan to "steal the victim's marijuana" at gunpoint, that the group intended to take all of the

---

[4] (Punctuation omitted.) *Arrington v. State*, 244 Ga. App. 529, 530-531 (536 SE2d 212) (2000).

marijuana available, i.e., 28.35 ounces. We do not find it irrational for the jury to believe that the perpetrators would not commit a major felony like armed robbery in order to then selectively remove only a misdemeanor amount of marijuana. Criminal intent may be inferred from all of the circumstances connected with the act for which the accused is being prosecuted, and such intent is a question for the jury to determine.[5] They did so. The evidence, with all reasonable inferences drawn therefrom, is sufficient to support the jury's determination.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 22, 2001.

*Jerry W. Moncus*, for appellant.
*Kermit N. McManus, District Attorney*, for appellee.

---

[5] *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000).