A01A0850. MOTEN v. THE STATE.
(554 SE2d 553)

SMITH, Presiding Judge.

Julius Lamar Moten was convicted by a jury of the offense of armed robbery. His motion for new trial as amended was denied, and he appeals. None of Moten's contentions warrants reversal.

1. We find no merit in Moten's enumerations raising the general grounds. Evidence was presented that two clerks at a convenience store in Trenton were robbed at gunpoint by three men. Both clerks later identified Moten during separately conducted photographic lineups as one of the suspects. They also identified him at trial as one of the robbers. On the night of the Trenton robbery, a motel clerk was robbed at gunpoint in Dalton. That clerk later observed a surveillance video of the Trenton robbery and identified the men as the same individuals who had robbed her. Evidence was presented that the travel time between Dalton and Trenton is approximately 50 minutes.

Moten argues that the State's evidence fails to satisfy the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), largely because he presented alibi evidence and because a number of witnesses testified on his behalf that he was not one of the individuals depicted in the surveillance video. But on appeal, a defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. Further, we do not weigh the evidence or determine witness credibility. Instead, an appellate court determines whether the evidence is sufficient to convict the defendant beyond a reasonable doubt. Conflicts in witness testimony, even the testimony of the State's witnesses, are a matter of credibility for jury resolution. And as long as some competent evidence is presented to support every fact necessary to make out the State's case, even though contradicted, we will not disturb the jury's verdict. *Sweeder v. State*, 246 Ga. App. 557-558 (541 SE2d 414) (2000). Construed in this light, the evidence was sufficient to enable a rational trier of fact to find Moten guilty beyond a reasonable doubt. See *State v. Willis*, 218 Ga. App. 402, 404 (4) (461 SE2d 576) (1995) (victim's pre-trial and in-court identification of

defendant sufficient to authorize conviction).

2. Moten contends that the court erred in allowing the prosecutor to introduce testimony concerning his alleged gang activity. Relying on *Cunningham v. State*, 248 Ga. 835, 837 (4) (286 SE2d 427) (1982), he maintains that reversal is required because the prosecutor failed to "connect up" the testimony. The objected-to questions by the prosecutor arose during cross-examination of one of Moten's character witnesses, when the prosecutor asked the witness if he knew whether Moten had any gang affiliation or whether he was affiliated with the "Thug gang." The trial court allowed testimony concerning the subject on the condition that the prosecutor "connect it up." The witness testified that he was not familiar with Moten's affiliation with the gang or with Moten's "Thug" tattoo. But the witness also acknowledged that an individual's gang membership and having "Thug tattooed on their arm" would affect that person's reputation in the community. The prosecutor asked similar questions of other defense witnesses, as well as questions concerning a "sign" made by Moten in a photograph tendered by the defense. In addition, at least one witness testified on Moten's behalf that he was not involved in any gang. We note that although Moten testified that he was not a gang member, he showed fairly detailed knowledge concerning gang signs and clothing.

We do not agree with Moten that *Cunningham*, supra, is controlling. In *Cunningham*, physical evidence was admitted subject to being later connected with the crime and identified. Id. But the State concluded its evidence without connecting the evidence with the crime charged, and we held this to be reversible error. Here, however, the State first asked questions concerning Moten's gang activity on cross-examination of the first of Moten's character witnesses. And "it is permissible for the State to introduce evidence of a defendant's 'bad' character when the defendant himself declares himself 'a good man.'" *Anthony v. State*, 236 Ga. App. 257, 259 (2) (511 SE2d 612) (1999). Other questions posed by the State concerning gang activity related to Moten's own exhibit, and as discussed above, Moten presented evidence that he was not involved in a gang. Under these facts, we conclude that Moten himself opened the door to the State's questions on this subject and cannot now complain.

3. Moten argues that he was denied his rights to conduct a thorough and sifting cross-examination and to confront a witness when the trial court refused to allow him to ask one of the investigating officers if the officer had heard "about the fairly large number of people" who had recently been released from prison because they were misidentified. We do not agree. "Although a defendant is entitled to a thorough and sifting cross-examination of the witnesses against him, the scope of cross-examination is largely within the discretion of the

trial court and will not be interfered with by this court unless abused." (Citation and punctuation omitted.) *Hamilton v. State*, 238 Ga. App. 320, 321 (2) (517 SE2d 118) (1999). The information sought by Moten constituted very generalized hearsay. Further, the transcript is replete with testimony bearing on Moten's misidentification defense. Given these circumstances, we cannot conclude that the trial court abused its discretion in sustaining the State's objection to the proposed inquiry.

4. Moten contends that the trial court improperly shifted the burden of proof in charging the jury that it could take as substantive evidence the prior inconsistent statements of certain witnesses. But in *Holiday v. State*, 272 Ga. 779 (534 SE2d 411) (2000), the Supreme Court of Georgia explicitly upheld the rule stated in *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), that prior inconsistent statements are admissible as substantive evidence. See also *Gordon v. State*, 273 Ga. 373, 376 (2) (b) (541 SE2d 376) (2001). Such prior statements are valuable, as they "are made closer in time to the event when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation, or appeals to sympathy." (Punctuation and footnote omitted.) *Holiday*, supra at 780-781 (2). We find no merit in Moten's contention with respect to this issue.

5. We next address Moten's three enumerations concerning the State's alleged violations of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

(a) Moten's first argument relates to the surveillance video that was played for the jury. Without any citation to the record, he states in his appellate brief that the State produced for him "a purported duplicate" of the tape involving the Trenton robbery and that after that trial, a trial was held in Whitfield County regarding the other robbery. He claims that during the Whitfield County trial, the original Trenton robbery tape was played in its entirety. He claims that the tape "shows a Trenton City Police Officer obliterating potential evidence, by leaning on and wiping the counter the Appellant is alleged to have jumped over." Moten contends that palm prints or fingerprints could have been present that showed he was not the suspect. The only showing made by Moten concerning this issue was his argument on motion for new trial. His counsel contended during the hearing that the video showed a police officer "proceed to spread all of his stuff out and essentially wipe the counter off which would have eliminated the potential for at least for a print . . . on that surface that we contend would have exonerated Mr. Moten." Moten clearly has not shown error by the record. He "has the burden to affirmatively show asserted error by the record. Having failed to demonstrate support in the record for this enumeration, we find no error."

(Citations and punctuation omitted.) *Sirmans v. State*, 244 Ga. App. 252, 256 (4) (534 SE2d 862) (2000).

More importantly, even if Moten had met his burden of properly showing error, on appellate review, he has not shown grounds for reversal.

> In dealing with the failure of the [S]tate to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

(Citations and punctuation omitted.) *Milton v. State*, 232 Ga. App. 672, 678-679 (6) (503 SE2d 566) (1998). The record is devoid of any evidence that the police officer acted in bad faith by placing his materials on the counter. Further, unlike the defendant in *State v. Blackwell*, 245 Ga. App. 135 (537 SE2d 457) (2000), cited by Moten, Moten has failed to show that the purportedly destroyed evidence had exculpatory value that was apparent before it was destroyed. The counter was dusted for fingerprints, but only "smudges" were obtained. The testimony of one of the investigating officers showed that it was rare for usable fingerprints to be discovered. Moten has shown only a bare speculation that the purported evidence might have exonerated him. He has failed to show that the evidence would have played a "significant role" in his defense, *Albert v. State*, 180 Ga. App. 779, 783 (3) (350 SE2d 490) (1986), and has not met the standard for reversal of a conviction based on the destruction of evidence.

(b) Moten argues that the State committed a *Brady* violation by refusing to reveal that one of the investigating officers had offered money to a witness to procure his testimony. In support of his motion for new trial, Moten attached an affidavit of one of the witnesses, which recited that the officer had offered him $250 for his testimony. During the hearing on Moten's motion for new trial, the officer adamantly denied this allegation. On motion for new trial, it was the trial court's duty to determine witness credibility. See generally *Mobley v. State*, 264 Ga. 854, 856 (452 SE2d 500) (1995). Inherent in the trial court's denial of Moten's motion for new trial is the court's ruling that the officer's testimony was more credible than the post-

trial affidavit testimony of another witness. A new trial is not required on this basis.

(c) Moten's final enumeration of error is that the State violated *Brady* by failing to disclose that while showing one of the victims a photo lineup, one of the investigating officers told the victim that the other victim had made an identification of one of the suspects in the same photo lineup. In support of this contention, Moten submitted the purported transcript from the trial involving the Whitfield County robbery. We find no merit in Moten's argument. Even assuming that the uncertified, unauthenticated transcript constituted proper evidence, the officer's testimony showed that the transcript testimony was taken out of context and that the photo lineup at issue did not include any photographs of Moten. Again, the trial judge was the arbiter of witness credibility, *Mobley*, supra, and we find no reversible error with respect to the trial court's denial of Moten's motion for new trial on this ground.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED AUGUST 28, 2001 —
RECONSIDERATION DENIED NOVEMBER 1, 2001.

*Frank B. Perry*, for appellant.
*Herbert E. Franklin, Jr., District Attorney*, for appellee.