A02A0575. BRIDGES v. THE STATE.
(568 SE2d 574)

JOHNSON, Presiding Judge.

Joseph Walter Bridges pled guilty to a burglary charge on November 3, 1998, in Douglas County and was given a twenty-year sentence; he was ordered to serve eight of the twenty-year sentence in confinement. After sentencing, he remained in the Douglas County jail awaiting transfer to a state prison facility. After about three days, Bridges was transferred to the Newton County jail on a superior court bench warrant in an unrelated case. The paperwork sent with Bridges stated that he was "under sentence requiring state time to be served." About a week after being transferred to the Newton County facility, Bridges was allowed to post bond on the Newton County charge. Once Bridges posted bond, he was given his possessions and left the jail without incident.

A short time later, Douglas County received calls that Bridges was out of jail. The bondsman could not find Bridges at any of the addresses he gave to the bonding company. On December 3, 1998, an investigator with the Metro Fugitive Squad began searching for

Bridges. The fugitive squad looked for Bridges at his last known address and investigated his family and known associates, with no success. Finally, nearly 16 months after he left the Newton County jail, investigators with the Metro Fugitive Squad found Bridges dining at a restaurant and arrested him.

Bridges was charged in Newton County with escape. After a jury trial, he was convicted of the charge. He appeals from the conviction, claiming: (1) the evidence was insufficient to support the verdict because there was no evidence showing that he had criminal intent to commit escape or that his departure was unauthorized; (2) the trial court erred in denying his motion for directed verdict of acquittal when the state failed to show that he escaped from the state's custody within the layperson's meaning of the word "escape"; and (3) the trial court erred in denying his motion for mistrial because the state presented prejudicial testimony in violation of a motion in limine. Each of these arguments is without merit, so we affirm the conviction.

1. On appeal, a defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[1] Further, we do not weigh the evidence or determine witness credibility.[2] Instead, an appellate court determines whether the evidence is sufficient to convict the defendant beyond a reasonable doubt.[3] Here, the evidence was sufficient.

A person commits the offense of escape when he, having been convicted of a felony, intentionally escapes from lawful custody or from any place of lawful confinement.[4] The statute does not define "escape," and we have found no cases defining the term.

Black's Law Dictionary defines "escape" in several ways, such as "[a]n unlawful departure from legal custody without the use of force," or "[a] prisoner's departure from legal custody as a result of an officer's negligence."[5] According to Black's, "escape" can also mean "an unauthorized departure from legal custody," or "an unlawful departure or an avoidance of capture."[6] And, escape can be accomplished with the express consent of the keeper.[7]

Similarly, Webster's New International Dictionary defines "escape" as "[t]he unlawful departure of a prisoner from the limits of his custody . . . often . . . without prison breach, being called negligent when without the custodian's consent and voluntary when with

---

[1] *Moten v. State*, 252 Ga. App. 222 (1) (554 SE2d 553) (2001).
[2] Id.
[3] Id.
[4] OCGA § 16-10-52.
[5] Black's Law Dictionary (7th ed. 1999), p. 564.
[6] Id.
[7] Id.

it."[8] Considering these definitions, a rational trier of fact could have found that Bridges' departure from the Newton County jail after he served only a few days of his eight-years-to-serve sentence constituted an escape.

We are not persuaded by Bridges' argument that there was no escape because jail officials authorized his departure. First, the fact that a custodian's negligence may have made his premature departure possible does not mean there was no escape.[9] Second, the Newton County officials did not have authority to release Bridges from state custody and the sentence of confinement imposed in Douglas County.

Nor are we convinced that a lack of evidence showing criminal intent mandates reversal. Criminal intent may be inferred from all of the circumstances connected with the act for which the accused is being prosecuted.[10] The accused's conduct before and after the offense are circumstances from which criminal intent may be inferred.[11] Whether an accused possesses the requisite intent is a question for the jury to decide.[12]

Here, the jury could have found from the evidence presented that when Bridges walked away from state custody, he knew that his eight-year sentence imposed just days earlier had not yet been served. Moreover, criminal intent to avoid lawful confinement could be inferred from the fact that Bridges gave the bondsman inaccurate information regarding his anticipated residence and place of employment, that he could not be found at any of the addresses given, and that he could not be found by the fugitive squad for over a year. Contrary to Bridges' contention, a rational trier of fact could have found the essential elements of the crime of escape beyond a reasonable doubt.[13] Therefore, this enumeration lacks merit.

2. The denial of a motion for directed verdict of acquittal should be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[14] As discussed in Division 1, a rational jury could have found the elements of the crime of escape beyond a reasonable doubt in this case. Therefore, Bridges' complaint that the trial court erred in denying his motion for a directed verdict of acquittal based on the lack of evidence that he

---

[8] Webster's New Intl. Dictionary (2nd ed. 1959), p. 871.

[9] See *Johnson v. State*, 246 Ga. 126, 128 (V) (269 SE2d 18) (1980); *Holt v. State*, 143 Ga. App. 438, 439 (1) (238 SE2d 763) (1977); Black's Law Dictionary, supra.

[10] *Dunn v. State*, 248 Ga. App. 223, 226 (2) (546 SE2d 27) (2001).

[11] See *Woods v. State*, 232 Ga. App. 367, 368 (1) (501 SE2d 832) (1998).

[12] *Dunn*, supra.

[13] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see generally *Holt*, supra.

[14] *Miller v. State*, 233 Ga. App. 814, 816 (2) (506 SE2d 136) (1998).

intended to escape and that he was not authorized to leave the jail is without merit.

3. We reject Bridges' claim that the trial court's denial of his motion for mistrial based on a violation of his motion in limine warrants reversal.

Before trial, Bridges filed three motions in limine. He sought to: (1) restrict the state's witnesses from discussing the factual circumstances surrounding the underlying burglary conviction; (2) prohibit the state from allowing its witnesses to use the word "escape" and from eliciting from witnesses an opinion as to the ultimate issue — whether Bridges did, in fact, escape; and (3) prohibit the state from introducing any evidence regarding what actions the Metro Fugitive Squad took to take him back into custody after he left the jail, other than the circumstances immediately surrounding his arrest. The trial court granted the first motion, and granted in part and denied in part the second motion. The trial court denied the third motion, which is the one at issue on appeal, finding that evidence regarding the fugitive squad's efforts to find Bridges was relevant to the issue of Bridges' knowledge and intent concerning whether he was lawfully out of jail.

At trial, the state asked an investigator with the Metro Fugitive Squad about the fugitive squad's procedures in locating fugitives. The witness summarized the squad's information-gathering process, and the state asked the investigator if he had some or all of that information available to him when he was looking for Bridges. The investigator unresponsively remarked that "Mr. Bridges had been chased by our squad before. In fact, when he was caught and sent to Douglas County on the sentence that he had there —." Defense counsel objected to this testimony and moved for a mistrial.

This unsolicited testimony, while it may have been objectionable on other grounds, did not violate the trial court's ruling on the motion in limine, inasmuch as the only motion in limine which was even remotely related to this testimony had been *denied*. Bridges has not enumerated as error the trial court's denial of the motion in limine, nor has he enumerated any other error related to the investigator's testimony. Accordingly, no other issues will be addressed.[15] This enumeration presents no ground for reversal.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED JULY 3, 2002.

*Ninfo & Ledbetter, Mario S. Ninfo*, for appellant.

---

[15] See generally *Gay v. State*, 233 Ga. App. 738, 740 (3) (505 SE2d 29) (1998).

*W. Kendall Wynne, Jr., District Attorney, Alan A. Cook, Assistant District Attorney*, for appellee.