## S13A1562. ALEXANDER v. THE STATE.
(751 SE2d 408)

THOMPSON, Chief Justice.

Appellant Robert Alexander was sentenced to life without parole for the felony murder of Diamone Wilson, a two-year-old child.[1] He appeals from his convictions and the denial of his motion for new trial in which he asserted the trial court erred by limiting the scope of voir dire and improperly commenting on the evidence. For the reasons that follow, we affirm.

1. The jury was authorized to conclude from the evidence presented that prior to her death, Diamone had been living with appellant and Margaret Daniels, a relative of Diamone's mother. Although Diamone had been diagnosed with asthma, she was a healthy child with no history of health problems. On the day of the crimes, Daniels went to a doctor's appointment, leaving Diamone in appellant's care. Diamone at that time was walking and playing normally. When Daniels returned approximately two hours later, she found Diamone lying unconscious on the floor and appellant pushing on her chest. Appellant told Daniels that Diamone had been eating when she began to seize or choke on her food. When emergency medical personnel arrived, Diamone was essentially unresponsive, bleeding from her mouth, and having difficulty breathing.

Diamone was taken by ambulance to the hospital, where doctors discovered she had a five inch by six inch fracture to her skull which was causing severe bleeding and swelling in her brain. Doctors also discovered a grade five liver laceration, fractures of her spine and pelvis, and both old and new fractures of both forearms. A detailed examination further revealed possible cigarette burn marks on her legs, a deformity of her right forearm, bruises on her chest and forehead, and a patterned injury to her abdomen.

Appellant told police that Diamone had been in his care throughout the morning, she had not fallen or hit her head, and she suddenly seized or choked while she was eating. After police described the severity of Diamone's injuries, and despite appellant's previous

---

[1] The crimes were committed on July 15, 2010. Appellant was indicted by a DeKalb County grand jury on May 5, 2011, and charged with two counts of felony murder, aggravated battery, and cruelty to children in the first degree. After a trial on September 19-26, 2011, the jury found appellant guilty of all charges. On September 27, 2011, the trial court sentenced appellant to life without parole for felony murder. The remaining counts merged or were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Appellant filed his motion for a new trial on September 27, 2011, and amended the motion on December 5, 2011. His motion for new trial was denied on March 19, 2013, and he filed a notice of appeal on April 17, 2013. The appeal was docketed to the September 2013 term of this Court and orally argued on October 7, 2013.

denial that she had fallen or been injured in any way, appellant explained that Diamone had fallen down the stairs months earlier and may have been limping a little the morning before her death.

Diamone died a few days later from complications caused by blunt force trauma to her head. Medical experts at trial described the amount of force required to inflict Diamone's injuries as equivalent to ejection from a motor vehicle or a fall from a multi-story building. The nature, extent, and timing of her injuries, as well as the amount of force required to inflict such injuries, led these experts to repeatedly reject the contention that Diamone died as a result of a disease, seizure or previous fall.

Construed in the light most favorable to the verdicts, we find the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Although the State's case against appellant was based entirely upon circumstantial evidence, it established that Diamone was healthy when she was left in appellant's care, that she died as the result of blunt force trauma to the head which could not have resulted from the normal activities of a child or a fall down the stairs, that she would have been incapacitated by her injuries almost immediately, and that appellant was alone with Diamone during the more than two hours before she was injured. We conclude, therefore, that the evidence presented was sufficient to authorize a rational jury to find that the State had excluded every reasonable hypothesis except that of appellant's guilt. See former OCGA § 24-4-6; *Zamora v. State*, 291 Ga. 512 (2) (731 SE2d 658) (2012); *Carter v. State*, 276 Ga. 322, 323 (577 SE2d 787) (2003).

2. During voir dire, the State inquired whether any member of the venire did not believe in corporal or physical punishment of children. Defense counsel later asked a particular venire member whether "the fact that there are allegations in this case of corpor[al] punishment being used towards a child, would that in any way prevent you from being fair and impartial towards my client, Mr. Alexander?" The venire member answered no, and when defense counsel attempted to ask a more specific question regarding corporal punishment with a belt, the State objected. The trial court sustained the State's objection, and appellant argues that by doing so, the trial court improperly restricted voir dire.

In reviewing a claim regarding the proper scope of voir dire, we are mindful that

> [t]he single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the

merits with objectivity and freedom from bias and prior inclination. Questions of a technical legal nature and questions that call for prejudgment are improper in a voir dire examination. Since there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice, the scope of the voir dire examination, of necessity, must be left to the sound discretion of the trial court.

*Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003) (citation and punctuation omitted). At the same time, Georgia law allows both the State and the defense in criminal cases the right to an individual examination of prospective jurors from which the jury is to be selected. OCGA § 15-12-133.

In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

Id.

After reviewing the record, we conclude the voir dire in this case was sufficient in scope to both comport with appellant's rights under OCGA § 15-12-133 and to ascertain the fairness and impartiality of the prospective jurors. The State's theory in this case was that the child died as a result of an extreme blunt force trauma to the head inflicted immediately or almost immediately prior to her incapacitation. Therefore, corporal punishment with a belt was not the cause of death alleged by the State, and any potential bias respecting the use of a belt to inflict corporal punishment was not a potentially critical factor which required disclosure. See *Ellington v. State*, 292 Ga. 109, 127 (735 SE2d 736) (2012) ("subject matter of an action" is not understood to include every detail of the case). Additionally, although defense counsel was prohibited from questioning panel members about a specific method of corporal punishment which was likely to come up at trial, the trial court did not preclude questioning about the

entire subject matter. Venire members were asked about any potential bias they may have had regarding corporal punishment of a child, and defense counsel was permitted to inquire of specific members whether allegations of corporal punishment of a child would affect their ability to be fair and impartial. These inquiries were sufficiently specific to focus panel members on the facts that the victim in this case was a child whom the State alleged died as a result of physical injuries and allowed them to answer the questions with these facts in mind. Because the trial court permitted questions about the use of corporal punishment against children and any bias on the subject, we find no abuse in the trial court's decision to restrict the scope of voir dire in the limited manner it did.

3. Appellant contends the trial court violated OCGA § 17-8-57 when it questioned Daniels at trial about her prior statement to police. More specifically, appellant argues the trial judge commented on the credibility of Daniels' testimony when he asked Daniels about her use of the term "we" as she discussed her prior statement that "we" had disciplined Diamone.[2] Our review of the transcript reveals no violation of OCGA § 17-8-57, however, because the trial court's questions were posed for the purpose of clarifying the witness' testimony concerning her prior statement and did not express or intimate an opinion regarding the credibility of the evidence being offered or the guilt of the accused. See *Finley v. State*, 286 Ga. 47 (9) (685 SE2d 258) (2009) (judge may make comments or pose questions to witness for purpose of developing truth of the case or to clarify testimony); *Curry v. State*, 283 Ga. 99 (4) (657 SE2d 218) (2008) (trial court's questions did not violate OCGA § 17-8-57 because they were entirely objective, did not suggest answers to witness, and related to events surrounding crimes). Moreover, the record does not support appellant's assertion that the trial court prevented the witness from further explaining her statements. It shows, instead, that defense counsel was free to continue his cross-examination on the subject but chose to move on. Accordingly, this enumeration is without merit.

---

[2] Daniels testified on direct-examination that she had seen appellant discipline Diamone on one occasion with his hand and a belt and admitted telling police after the crimes that "we whip her with a belt and our hand." On cross-examination, defense counsel attempted to clarify Daniels' statements by asking her whether when she said "we," she meant both her and appellant. She answered in the negative, prompting the following colloquy:

Court: Hold on for a second. What did you just say?
Daniels: No. Like when I say we, it's like —
Court: You have a Master's degree; is that correct?
Daniels: I do.
Court: So what does the word we mean?
Daniels: It means more than one person.
Court: Okay. Go ahead.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 18, 2013 —
RECONSIDERATION DENIED DECEMBER 11, 2013.

*Gerard B. Kleinrock*, for appellant.

*Robert D. James, Jr.*, District Attorney, *Deborah D. Wellborn*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Katherine T. Parvis*, Assistant Attorney General, for appellee.