**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 7, 2017**

# In the Court of Appeals of Georgia

A17A0481. REID v. THE STATE.

REESE, Judge.

A Fulton County jury found Eddie Reid guilty beyond a reasonable doubt of rape, aggravated sodomy, kidnapping, false imprisonment, aggravated assault, and possession of a firearm during the commission of a felony.[1] He appeals from the denial of his motion for new trial, contending, inter alia, that the trial court abused its discretion in admitting certain evidence, that the judge improperly commented on the evidence, that the jury instruction contained errors, that the oath was not properly given to some of the witnesses, and that he received ineffective assistance of counsel. For the reasons that follow, infra, we affirm.

---

[1] See OCGA §§ 16-6-1 (a) (1); 16-6-2 (a) (2); 16-5-40 (a); 16-5-41 (a); 16-5-21 (b) (2); 16-11-106 (b) (1).

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows the following facts. Around 11:00 p.m. on May 28, 2010, a 27-year-old woman left her brother's home in Atlanta and started walking home along Jonesboro Road. A car pulled up and stopped along the road, and the driver, whom she did not know, asked her if she needed a ride. She got into the car and, as they traveled, she gave the driver directions, eventually asking him to make a right turn. The driver did not turn, but drove onto the expressway instead. The woman (hereinafter, "the victim") started yelling at him and asking him what he was doing. The driver, whom the victim later identified as Reid, said something about "pimping," took her phone and purse, and told her to put her head down. The victim could not see where they were going and was frightened, and she repeatedly asked him to let her go. Reid kept telling her, "Bitch, shut the f up." The victim would have tried to get out of the car, but the passenger-side door handle was missing.

Reid took the victim to an abandoned house, but, before he let her out of the car, he got something out of the trunk. When he opened the passenger-side door, she got out and tried to run, but he caught her and choked her, telling her that he would

_____

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

kill her right there. She saw that he had a 9 millimeter handgun, and she started screaming for help. Reid told her to shut up, accusing her of trying to send him to prison, and he dragged her into the house. Once inside, he took her through the house and appeared to be looking for some place to put the victim, while she begged him to let her go. Still holding the handgun, Reid took the victim upstairs, forced her to perform oral sex on him, and then raped her. When he was finished, Reid made her take off her clothes, shutting her inside a room while he went downstairs and made a phone call. He returned and tied her hands behind her back with stereo wire and duct tape, then used a shirt to hog-tie her hands and feet. Reid went downstairs, and the victim thought he had left the house. She moved around until she freed her legs from the restraints. However, Reid came back into the room, told her he was going to kill her, and tried to throw her out an upstairs window. When that failed, he took her downstairs and threw her through a window that was about eight feet above the ground, shattering the glass and seriously wounding the victim. The victim heard Reid say something like, "I killed that b***h," before he left in his car.

The victim got up and ran to a neighbor's house, screaming that she had been kidnapped and raped and kicking the door because her hands were still tied behind her back. She begged the neighbor to let her in. The neighbor saw the victim on his

front stairs through a window, and saw that she was naked, bleeding severely, and had her hands tied behind her back. Although he did not let her in, he told his grandmother to call 911 while he kept an eye on the victim.

A few minutes later, Reid returned in his car, jumped out and ran toward the victim with his gun drawn, and told her that he was going to kill her. He grabbed her, slammed her against the neighbor's door, dragged her by her hair through the yard, hit her repeatedly, and threw her into his car, hitting her face against the car in the process. He drove away before police officers arrived, and, as he drove, he started crying, saying that he had kids and that he should not have done it. He took the victim to a hotel, where they stayed until the next morning, when the victim convinced him that she needed to go to the hospital. Reid dropped off the victim at a hospital emergency room and told her that he was going to come back and get her. The victim told the hospital staff what had happened to her, and a staff member called the police.

An Atlanta police officer arrived at the hospital and spoke with the victim before calling the Special Victims Unit of the police department. According to the detective who interviewed the victim at the hospital, the victim had deep cuts all over her body, she was in pain and appeared to be in shock, and she was crying and scared. While speaking with the detective, the victim received some texts from Reid on her

4

cell phone. After reading the texts, the detective had another officer trace the phone number. After confirming that the number belonged to Reid, the officer compiled a photographic array of six pictures, one of which was Reid's. The detective showed the victim the photos, and the victim picked out Reid's picture and identified him as her assailant. The detective took pictures of the victim's injuries, then transported her to police headquarters, where the detective interviewed the victim again before obtaining warrants for Reid's arrest.

In the meantime, at 1:47 a.m. that morning, Atlanta police officers were dispatched in response to the neighbor's 911 call and spoke with the neighbor. The officers observed blood on the neighbor's porch and stairs and drag marks across the yard, where they also found braids that looked as if they had been pulled from someone's head. The house next door had a broken window with the blinds pushed outside the window and shattered glass and a screen on the ground. There was blood on the windowsill and the screen. Fearing that there might be someone in danger inside the house, the officers broke through the front door and went into the house. Upstairs, the officers found blood on the floor and women's clothing and underwear.

On June 1, 2010, officers with the Atlanta Police Department's Fugitive Squad arrested Reid pursuant to several warrants arising from the instant offenses. After

transporting Reid back to the public safety headquarters, investigators with the Special Victims Unit conducted a custodial interview of Reid.[3] Reid told investigators that, while driving on the night at issue, he picked up the victim, whom he did not know, at random from the side of the road with the intention of forcing her to become a prostitute. He took the victim to a house, showed her his handgun, and took her inside the house. Reid admitted that the victim was "upset" and "scared." Inside the house, he had sex with her. Reid admitted to the investigators that he did not think she would have had sex with him if he had not had the handgun. Reid tied the victim's hands with speaker wire, then he left the house. According to Reid, when he came back, he saw the victim walking down the sidewalk, naked, trying to "get away." He tried to "convince" her to get into his car, but, when she refused, he grabbed her hair and pulled her into the car against her will. Reid admitted that he punched the victim, that she was screaming and physically resisting him, that he knew she was afraid and did not want to leave with him, that he knew what he was doing was wrong, and that he was very "sorry that he had to do that to her." Reid also told the investigators that a "pimp" and drug dealer named "Mike" had forced him to pick

---

[3] Although the interview was video-recorded and later transcribed, the recording was not played for the jury at trial, nor was the transcript read to the jury during trial or provided to the jury during deliberations.

up the victim so that "Mike" could make her a prostitute. Reid claimed that "Mike" had control over him and had threatened to kill him and his family.

The evidence also showed that, when officers arrested Reid, they impounded a car that was registered to him and was parked at the house where he was apprehended. The detective in charge of the case obtained a search warrant for the car, and the officer who conducted the search found a handgun, blood residue, speaker wire, pliers, and a shirt with blood on it. They also observed that the inside, passenger-side door handle was missing.

The State indicted Reid for rape, aggravated sodomy, kidnapping, false imprisonment, armed robbery, aggravated battery, three counts of aggravated assault, and possession of a firearm during the commission of a felony. At trial, Reid testified in his own defense, telling the jury that, as he was driving on the night at issue, the victim waved him down and asked him for a ride. The victim directed him to a house and went inside while he waited in the car. According to Reid, two men drove up and forced him at gunpoint to go into the house and to lie on the floor. A man inside the house, who was named "Mike," took Reid's wallet, found out Reid's address, and threatened to kill his family. Reid testified that he and "Mike" got into his car and drove to his (Reid's) house, leaving the victim behind. "Mike" took Reid's phone,

7

warned him not to call the police, and then left with the other men in a separate car. Reid told the jury that "Mike" had framed him for the crimes against the victim.

During cross-examination, however, Reid admitted that, during his custodial interview, he had not told the investigators about being accosted by the two men. Reid also admitted that he had told the investigators that he had taken the victim to an abandoned house; that she saw his handgun; that he had sex with her; that he tied her hands with speaker wire; that he bound her feet with a shirt; that, after he returned to the house, he grabbed her and pulled her by her hair; that he had his gun when he forced her into his car; and that, throughout most of this encounter, she was naked, afraid, panicking, and screaming. Even so, he specifically denied that he raped the victim, threw her out of the window, hit her with his gun, dragged her through the yard, or threw her into his car.

The jury found Reid guilty of rape, aggravated sodomy, kidnapping, false imprisonment, aggravated assault, and possession of a firearm during the commission of a felony. Following the court's denial of his motion for new trial, he appeals.

1. Reid contends that the trial court abused its discretion in allowing the State to introduce evidence of "improper matters" during the trial. This Court reviews a

trial court's ruling on the admission of evidence under an abuse of discretion standard.[4]

(a) Reid challenges the admission of a statement by the victim that he characterizes as a statement about his potential "future dangerousness." The trial transcript shows that, when the prosecutor asked the victim why she reported the assault to the police, she responded, "Because I felt like if he did it to me, he'll do it to somebody else." Defense counsel objected on the basis that the prosecutor's question was "improper," and the court overruled the objection. However, Reid did not object to the evidence at issue (the victim's answer) on the basis that it constituted inadmissible "future dangerousness" evidence.

"Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court."[5]

Reid argues that, even though his counsel did not raise this specific objection at trial, the admission of this evidence may be reviewed for "plain error" on appeal

---

[4] *Carter v. State*, 296 Ga. App. 598, 601, n. 7 (675 SE2d 320) (2009).

[5] *Rogers v. State*, 298 Ga. App. 895, 903 (6) (681 SE2d 693) (2009) (citations and punctuation omitted).

9

under OCGA § 24-1-103 (d). However, the General Assembly enacted that provision as part of the new Evidence Code, which does not apply in this case, because Reid's trial was conducted in April 2011.[6] And, under the former Evidence Code, evidentiary rulings are not subject to appellate review in the absence of a timely objection at trial.[7]

Consequently, because Reid's counsel did not object to the victim's answer on the basis that it constituted inadmissible "future dangerousness" evidence,[8] this alleged error is waived.[9]

(b) Reid contends that the State improperly presented a "victim impact statement" when it elicited the victim's testimony about how her life had changed

---

[6] See Ga. L. 2011, p. 99, § 2. The new Evidence Code applies only to any motion made or hearing or trial commenced on or after January 1, 2013. See Ga. L. 2011, p. 99, § 101.

[7] *Pyatt v. State*, 298 Ga. 742, 745-746 (2), n. 7 (784 SE2d 759) (2016).

[8] See Division 7 (d) (i), infra, regarding a related claim of ineffective assistance of counsel.

[9] See *Pyatt*, 298 Ga. at 745-746 (2), n. 7.

since her assault. Reid did not object to the testimony,[10] however, so this claim of error is not preserved for appellate review.[11]

(c) Reid contends that the trial court abused its discretion in admitting bad character evidence, specifically, an officer's reference to him as a "violent felon," in violation of former OCGA §§ 24-2-2 and 24-9-20 (b).[12] He argues that the statement was false, irrelevant, and prejudicial.

The trial transcript shows that an officer with the Fugitive Squad of both the Atlanta Police Department and the Federal Bureau of Investigation testified that, on June 1, 2010, three days after the victim was assaulted, his squad was tasked with

---

[10] See Division 7 (d) (ii), infra, regarding a related claim of ineffective assistance of counsel.

[11] See *Pyatt*, 298 Ga. at 745-746 (2), n. 7; see also *Tollette v. State*, 280 Ga. 100, 103 (6) (621 SE2d 742) (2005) (The defendant challenged the admissibility of testimony by the victim's widow that the grief the victim's mother carried over the murder of her son indirectly led to her death. Without ruling on the admissibility of this testimony, the Court held that the defendant waived his right to complain about it on appeal because he failed to object at trial.).

[12] See *Hinton v. State*, 253 Ga. App. 69, 70 (1) (557 SE2d 481) (2001) ("Generally, a party's character and conduct in other transactions are irrelevant, and evidence of a criminal defendant's general bad character is not admissible unless the defendant first puts his character in issue. [Former] OCGA §§ 24-2-2; 24-9-20 (b)."). In 2011, the Georgia General Assembly adopted a new Evidence Code that revised and renumbered these former Code sections, but the new Code became effective on January 1, 2013, after the 2011 trial in this case. See Ga. L. 2011, p. 99, §§ 2, 101.

apprehending Reid pursuant to several arrest warrants. As the officer explained, "It's common procedure for the fugitive unit . . . to be assigned cases where violent felons have . . . outstanding warrants[ ] for their apprehension." Reid did not object to this testimony at trial, but the record shows that he filed a motion in limine to exclude bad character evidence. Although the trial court's order on this motion is not in the appellate record,[13] we find that the motion has preserved this issue for our review.[14]

Pretermitting whether the officer's general reference to "violent felons" appeared to label Reid, specifically, as a "violent felon," the overwhelming evidence presented *prior* to the officer's testimony showed that Reid had, in fact, committed several extremely violent felonies against the victim and that, as a result, investigators had obtained multiple felony warrants for his arrest. And, shortly before making the statement at issue, the same officer testified that, as a detective with the Fugitive Task Force, "my primary responsibility is apprehending people that are wanted for violent crimes." Moreover, there was no evidence that there were any *other* outstanding

---

[13] The parties appear to agree that the court denied the motion at least in part, ruling that the officers would be allowed to testify about the "Fugitive Squad."

[14] See *Tollette*, 280 Ga. at 103 (8) ("[A]n adverse ruling by a trial court to a motion in limine seeking to limit a specific argument at trial serves to preserve the issue of the argument's propriety for appellate review[.]") (citation omitted).

felony warrants for Reid for offenses arising from a separate, unrelated incident, nor was there any evidence that he had previously been convicted of other violent crimes. Therefore, based upon the evidence presented, the only reasonable inference the jury could have made from the term "violent felons" was that it referred to Reid's commission of the instant crimes.

We conclude that, when read in context, the reference to "violent felons" was not false, irrelevant, or unfairly prejudicial to Reid, and the trial court did not abuse its discretion in allowing the testimony.[15]

2. Reid contends that the trial court abused its discretion in allowing the State to present "victim impact" evidence when the State failed to provide advance notice of its intent to present such evidence and failed to get the court's permission. Because Reid failed to object on this basis before or during the trial, this alleged error is waived.[16]

---

[15] See *Davis v. State*, 272 Ga. 327, 329 (2) (528 SE2d 800) (2000) ("Evidence relevant to an issue in the case is not rendered inadmissible because it may incidentally place the defendant's character in issue.") (footnote omitted).

[16] See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined by the trial court.") (footnote omitted).

3. Reid contends that a witness for the State improperly commented on his right to remain silent. We disagree.

The trial transcript shows that, when the prosecutor asked the arresting officer if Reid was given his *Miranda*[17] warnings at the time of his arrest, the officer responded, "Not by me, but I also didn't ask him any questions or anything like that." The prosecutor then asked him, "Did he speak to you?" The officer responded "Not about the case. We might have had a brief conversation like, you know . . ." Defense counsel objected, stating, "This is improper," and the court sustained the objection. But, when counsel added that he wanted to make a motion, the court told him, "No. you can make it later." After the State rested its case-in-chief, Reid's counsel moved for a mistrial on the basis that the officer's testimony impermissibly commented on his right to remain silent. The court denied it, and counsel did not ask for a curative instruction.

> [A]n improper comment on the defendant's silence does not necessarily require a reversal. The grant or denial of a mistrial is within the trial court's sound discretion, and the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial

---

[17] *Miranda v. Arizona*, 384 U. S. 436, 478-479 (III) (86 SCt 1602, 16 LE2d 694) (1966).

14

was essential to preserve the right to a fair trial. Furthermore, testimony about the defendant remaining silent is not deemed to be prejudicial if it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. Indeed, to warrant a reversal of a defendant's conviction, the evidence of the election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.[18]

In this case, the statement at issue was elicited while the officer was describing the circumstances surrounding Reid's arrest, the officer affirmatively stated that he had not asked Reid any questions, the comment did not point directly at the substance of Reid's defense,[19] and the comment could not reasonably be interpreted as commenting on Reid's guilt or innocence. And, although the trial court did not give a curative instruction after sustaining the objection, Reid cannot assert on appeal that the "court erred in failing to take any additional, unrequested curative actions."[20]

---

[18] *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008) (citations and punctuation omitted).

[19] See *Whitaker*, 283 Ga. at 524 (3); see also *Berryhill v. State*, 285 Ga. 198, 203 (5) (674 SE2d 920) (2009).

[20] See *Evans v. State*, 190 Ga. App. 302 (2) (378 SE2d 903) (1989) (citations, punctuation, and emphasis omitted).

Under these circumstances, we find that the court did not abuse its discretion in denying Reid's motion for a mistrial.[21]

4. Reid argues that the trial court improperly invited a hearsay objection to his testimony about his coercion defense. According to Reid, this made it appear that the court was advising the prosecutor, was biased in favor of the State, and was commenting on Reid's credibility.

As shown in the recitation of facts, supra, while testifying at trial, Reid gave a lengthy, uninterrupted narrative about his interaction with the victim, the man who had allegedly threatened him ("Mike"), and the two other men who he claimed accosted him on the night at issue. Reid repeatedly testified, without objection, about what the men said to him and to each other,[22] but then started testifying about what he heard "Mike" say to the victim. The court interrupted, asking, "Is there an objection to hearsay?" The prosecutor responded with a hearsay objection, and the

---

[21] See *Whitaker*, 283 Ga. at 524-525 (3) (The Court ruled that the trial court did not abuse its discretion in denying a motion for mistrial based upon a detective's testimony that the defendant initially waived his *Miranda* rights during a custodial interview, but later invoked his right to remain silent, ending the interview. The testimony was part of the detective's explanation of events, was not directed at evidence or defenses offered by the defendant, and was not probative of his guilt or innocence, and the court gave a curative instruction.)

[22] None of the men testified at trial.

16

court told Reid, "Don't tell us what anybody else said." Reid then testified that "Mike" took information about where he lived and then threatened him. Although the State objected to the hearsay, the court allowed it because the evidence was relevant to Reid's claim of coercion.

Later, during jury instructions, the court gave the following charge: "By no ruling or comment that the court has made during the progress of the trial has the court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant."

Former OCGA § 17-8-57[23] provided, in part, as follows: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." However,

> [t]he trial judge is more than a mere moderator of a debate, he is a minister of justice, whose duty it is to govern the progress of the trial and, where possible, to prevent introduction of redundant or inadmissible matters. Because of the trial court's broad discretion in regulating and controlling the business of the court, the reviewing court should never interfere with the exercise of that discretion unless it is

---

[23] The Georgia General Assembly amended the statute in 2015. See Ga. L. 2015, p. 1050, § 1.

made to appear that wrong or oppression has resulted from its abuse, or the court in some manner takes away the rights the parties have under the law.[24]

Here, the trial judge did not express or intimate his opinion as to Reid's guilt or what had or had not been proven, nor did he demean or admonish Reid or his counsel or suggest any bias toward the State. Further, Reid was not prevented from testifying about what the men purportedly said to him, explaining how their statements and actions affected him, and otherwise presenting his defenses.[25] Under these circumstances, we find no error.

5. Reid complains that the trial court erred in charging the jury.

(a) Reid claims that the court committed reversible error by failing to give the coercion charge he requested in writing before trial. We disagree.

Reid requested the following instruction:

A person is not guilty of a crime (except murder) if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his/her imminent death or great bodily injury.

---

[24] *Haas v. State*, 146 Ga. App. 729, 732 (5) (247 SE2d 507) (1978) (citations omitted).

[25] See *Alexander v. State*, 294 Ga. 345, 348 (3) (751 SE2d 408) (2013).

18

Coercion involves the involuntary performance of a criminal act under fear induced by threats or menaces involving a direct danger to life or great bodily injury when the danger can be avoided only by the performance of the criminal act. In order for duress or fear produced by threats or menaces to be a valid legal excuse for doing something that would otherwise be criminal, the act must have been committed under threats or menaces that show that the defendant's life or part of the defendant's body was in danger or that there was reasonable cause to believe that there was such danger and that the accused, in order to protect himself/herself from the threat of harm, had no alternative course of conduct but to commit the alleged criminal act. The danger must not have been one of future violence but rather must have been one of present, imminent, and immediate violence at the time the alleged act was committed.

The burden rests upon the State to disprove coercion beyond a reasonable doubt.

It is axiomatic that "[a] jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law."[26] Here, there was no evidence presented to show that Reid or his family was at risk of "present, imminent, and immediate violence" at the time Reid kidnapped and repeatedly assaulted the victim. In fact, the

_____

[26] *Marryott v. State*, 263 Ga. App. 65, 69 (5) (587 SE2d 217) (2003) (citation and punctuation omitted).

19

overwhelming evidence showed that *no one* other than he and the victim was present from the time Reid picked her up in his car until she ran, naked and severely bleeding, to a nearby house seeking help after he pushed her through a window. Although Reid told investigators that "Mike" had coerced him into picking up a woman so "Mike" could make her a prostitute, any threat by "Mike" was, at most, a threat of *future* violence. More importantly, there was no evidence that "Mike" or anyone else forced Reid to commit the offenses for which he was convicted, i.e., raping the victim, forcing her to perform oral sodomy on him, repeatedly assaulting and seriously injuring her, tying her up and holding her against her will, and kidnapping her by taking her from the abandoned house to the hotel.

It follows that the trial court did not err in refusing to give the requested jury instruction because it was not adjusted to or supported by evidence presented at trial.[27]

Further, to the extent Reid contends that the court was required to give the instruction because coercion was his sole defense,[28] the trial transcript shows that

---

[27] See *Marryott*, 263 Ga. App. at 69 (5) (a jury charge must be adjusted to the evidence presented).

[28] See *State v. Alvarez*, 299 Ga. 213, 214-215 (1) (790 SE2d 66) (2016) (The Court affirmed the grant of a new trial based on plain error in the court's failure to

20

Reid asserted another defense at trial, to wit: he denied that he had committed the offenses at issue and claimed, instead, that "Mike" had framed him. Consequently, this contention lacks merit.

(b) Reid also contends the court erred in failing to give a charge on "victim impact" evidence, even though Reid did not request such an instruction. As explained further in Division 7 (d) (ii), infra, any error was harmless in light of the overwhelming evidence of Reid's guilt.[29]

6. Reid contends that the trial court erred by not giving some of the witnesses the oath in front of the jury and by not telling the jury that the witnesses had been sworn.[30] Pretermitting whether this alleged oversight constituted error,[31] the Supreme

---

give a requested jury instruction on the defendant's sole defense, justification, which was supported by evidence at trial.).

[29] See *Brown v. State*, 289 Ga. 259, 260-261 (2) (710 SE2d 751) (2011) (holding that, because the evidence of the defendant's guilt was overwhelming, the court's failure to give a requested charge on impeachment constituted harmless error).

[30] Notably, Reid does not contend that any witness was allowed to testify without taking the required oath, and the trial transcript shows that all witnesses were "duly sworn."

[31] None of the cases cited by Reid in his brief hold that a witness must swear an oath in the jury's presence or that the court must explicitly inform the jury that the witness has been sworn.

Court of Georgia has ruled that "[o]ne who, without objection, allows a witness to go on the stand and give evidence against him without first being sworn can not, after conviction, urge the failure of the witness to take the oath, as a ground of a motion for new trial."[32] Because Reid failed to object on this basis at trial, this alleged error is waived.

7. Reid contends that his trial counsel provided ineffective assistance, citing to several alleged omissions.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[33] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We accept the trial court's factual findings and credibility determinations unless

---

[32] *Montes v. State*, 262 Ga. 473, 475 (3) (421 SE2d 710) (1992) (citations and punctuation omitted). See also *Bennett v. State*, 334 Ga. App. 381, 383 (1) (a) (779 SE2d 420) (2015) ("[I]t is well settled that the failure to object to unsworn testimony waives the issue for appeal.") (citations omitted).

[33] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

clearly erroneous, but we independently apply the legal principles to the facts.[34]

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[35]

(a) Reid asserts that his counsel failed to interview the victim and failed to locate and interview potential defense witnesses. During the motion for new trial hearing, however, trial counsel testified that he attempted to interview the victim, but was unable to do so, and that Reid did not tell him about any alibi or other witnesses who might testify on his behalf. Nor did Reid proffer the testimony of any such witness during the hearing. Moreover, he "failed to present any evidence as to what further research would have revealed or how any additional information would have

---

[34] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[35] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citations and punctuation omitted).

improved his position. It is not enough to speculate that such information exists and would have made a difference."[36] Therefore, this claim lacks merit.

(b) Reid contends that counsel was ineffective for failing to file a motion to suppress evidence recovered from his car and from the abandoned house where he committed some of the crimes.

> It is clearly settled that the mere failure to file a suppression motion does not constitute per se ineffective assistance of counsel. For example, it is not deficient to fail to file a motion which is frivolous. Even if a deficiency did result from trial counsel's failure to file a motion to suppress, [the defendant's] burden is to make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.[37]

(i) Reid complains that his car had been legally parked on public property and that officers illegally seized and impounded the car without a warrant. He argues that,

---

[36] *Davis v. State*, 299 Ga. 180, 191 (2) (c) (787 SE2d 221) (2016) (citations omitted); see also *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003) (holding that a defendant could not show prejudice based on his trial counsel's alleged failure to thoroughly investigate the case and call potential witnesses because he made no proffer as to what additional investigation would have uncovered or what the witnesses would have said if they had testified).

[37] *Mayes v. State*, 229 Ga. App. 372, 373 (1) (494 SE2d 34) (1997) (citation, punctuation, and emphasis omitted).

as a result, counsel was ineffective for failing to move to suppress evidence officers subsequently recovered from the car pursuant to a search warrant.

"Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property.[38] In each instance, the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment."[39]

In this case, the arresting officer testified that the car was registered to Reid and was parked outside the house where Reid was located and arrested. According to the officer, the description of the vehicle matched the car used in the kidnapping and other crimes against the victim, and he believed that the car, itself, was evidence. Moreover, impounding was necessary to ensure that no one else gained access to the car and removed or destroyed evidence. Under these circumstances, we conclude that

---

[38] But see *Strobhert v. State*, 165 Ga. App. 515 (301 SE2d 681) (1983) ("It is well established that a police seizure and inventory is *not* dependent for its validity upon the *absolute necessity* for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that.") (citation and punctuation omitted; emphasis supplied).

[39] *Canino v. State*, 314 Ga. App. 633, 640 (3) (725 SE2d 782) (2012) (punctuation and footnote omitted).

the officer was authorized to impound the car as an instrumentality of the crime.[40] It follows that, because the car was lawfully impounded, there was no basis to suppress the evidence recovered pursuant to a valid search warrant.[41] Thus, counsel cannot be deemed ineffective for failing to file a meritless or futile motion to suppress.[42]

(ii) Reid argues that trial counsel should have moved to suppress evidence seized during the warrantless entry into the abandoned house because, in order to gain entry, police officers had to force the door open. No evidence was presented, however, to show that Reid lived in the house or had an ownership interest in it. As such, he had no expectation of privacy in the house and lacked standing to challenge the validity of the search.[43] Thus, a motion to suppress evidence recovered from the

---

[40] See *Collins v. State*, 171 Ga. App. 906, 907-910 (2) (321 SE2d 757) (1984) (Officers were authorized to seize an automobile when there was probable cause to believe it was used in the kidnapping and rape of the victim, even though the car was parked in the driveway of a house belonging to the defendant's accomplice, which is where the defendant was arrested.).

[41] Reid does not challenge the validity of the search warrant on appeal.

[42] See *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012).

[43] See *Brown v. State*, 240 Ga. App. 321, 322 (1) (523 SE2d 333) (1999).

house would have been meritless, and the failure to file such a motion does not constitute ineffective assistance of counsel.[44]

(c) Reid contends that his arrest was illegal because (i) the magistrate who issued the warrant was not given sufficient information to determine if probable cause existed, and (ii) the officers did not have a search warrant for the house where he was arrested, which he claims belonged to a third party. He argues, therefore, that counsel was ineffective for not moving to exclude his custodial statement on the basis that it was obtained following an illegal arrest.

(i) Regarding whether the arrest warrant was sufficiently supported by a showing of probable cause, the record shows that each of the ten warrants issued complied with OCGA § 17-4-41 (a), which provides as follows:

> An affidavit made or warrant issued for the arrest of a person who is accused of violating the penal laws of this state shall include, as nearly as practicable, the following facts: (1) The offense, including the time, date, place of occurrence, against whom the offense was committed, and a statement describing the offense; and (2) The county in which the offense was committed.

---

[44] See *Burke*, 316 Ga. App. at 389 (1) (a).

27

Further, the detective who had interviewed the victim within hours of the crimes signed the affidavits under oath that, to the best of her knowledge and belief, Reid had committed the crimes alleged.[45]

"A magistrate's decision to issue a warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court."[46] We conclude that Reid has failed to demonstrate that the arrest warrants were not supported by probable cause. It follows that counsel cannot be deemed ineffective for failing to challenge the validity of the arrest warrants, as such a challenge would have been futile.[47]

(ii) Although Reid claims that the house where he was arrested belonged to a third party, there is no evidence in the record to support this. On the contrary, the evidence showed that Reid was arrested at the address that was listed on his car registration. Further, if Reid had no ownership or possessory interest in the house, as

---

[45] See OCGA §§ 17-4-40 (a) ("Any judge of a superior, city, state, or magistrate court . . . may issue a warrant for the arrest of any offender against the penal laws, based on probable cause either on the judge's or officer's own knowledge or on the information of others given to the judge or officer under oath."); 17-4-45 (form of affidavit for arrest warrant).

[46] *Waters v. State*, 281 Ga. 119, 120 (3) (636 SE2d 538) (2006) (citation omitted).

[47] See *Burke*, 316 Ga. App. at 389 (1) (a).

28

he claims, then he lacked standing to object to the officers' warrantless entry to the house.[48] Thus, this argument lacks merit.

(d) Reid claims trial counsel was ineffective for not objecting to inadmissible evidence elicited by the prosecutor's improper questioning of witnesses.

(i) Reid claims that counsel was deficient for failing to object to evidence of his "future dangerousness,"[49] specifically, the victim's statement that she reported the crimes to the police because she "felt like if he did it to [her], he'll do it to somebody else." Pretermitting whether counsel was deficient for not objecting to this single, isolated, and brief response by the victim, Reid has failed to demonstrate that he was prejudiced thereby. Given the overwhelming evidence of his guilt, he has failed to show that there is a reasonable probability that the outcome of the trial would have been different if that statement had been excluded.[50]

---

[48] See *Brown*, 240 Ga. App. at 322-323 (1) ("[R]ights such as those conferred by the Fourth Amendment are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched.") (citation and punctuation omitted).

[49] See Division 1 (a), supra.

[50] See *McClain v. State*, 267 Ga. 378, 383 (3) (a) (477 SE2d 814) (1996) (while reiterating that the issue of the defendant's future dangerousness may be relevant to sentencing but not to the question of his guilt, the Court concluded that, given the overwhelming evidence of the defendant's guilt, it was highly unlikely that the

29

(ii) Reid argues that counsel was ineffective for failing to object to the admission of a "victim impact" statement and for failing to request a jury instruction on the consideration of such statement.[51] Reid contends, inter alia, that such testimony is inadmissible during the guilt/innocence stage of trial.

The testimony at issue is as follows: When the prosecutor asked the victim how her life had changed in the year since she was assaulted, the victim responded that she "[d]ropped out of school. Stopped going to school. Losing weight. I'm not sleeping. I have nightmares and stuff. Just, basically, it just – people [are] always asking me

---

improper portion of the prosecutor's closing argument contributed to the jury's verdict); cf. *Collier v. State*, 266 Ga. App. 345, 351-355 (2) (596 SE2d 795) (2004) (holding that trial counsel's failure to object to the prosecutor's repeated, pervasive, and clearly improper references during closing arguments to similar transactions committed by the defendant constituted deficient performance and amounted to prejudice that required a new trial); *Williams v. State*, 261 Ga. App. 511, 517-518 (3) (583 SE2d 172) (2003) (This Court held that trial counsel provided ineffective assistance by failing to object to the prosecutor's closing argument, during which she referenced the Columbine High School tragedy and improperly focused on the defendant's future dangerousness, suggesting that, if the jury acquitted the defendant, he might commit mass murder. The Court characterized the argument as incendiary, inflammatory, and distracting, noted that the improper comments were "neither isolated nor offhand," and found that prejudice was more likely because the evidence against the defendant "was hardly overwhelming.").

[51] See Divisions 1 (b), 2, and 5 (b), supra.

how I [got] that scar on my face. Like when it's hot outside, ask[ing] me how I [got the] scars on my body and stuff."

It is unnecessary for this Court to decide whether the admission of this statement was, in fact, improper or whether counsel was deficient for failing to object to it or request a jury instruction. We conclude that, given the overwhelming evidence of Reid's guilt, there is no reasonable probability that the outcome of the trial would have been different but for the admission of this statement. "Since an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong."[52] Thus, Reid cannot prevail on this ineffective assistance claim.

(e) Reid claims that his counsel was ineffective for not objecting when the trial court failed to give some of the witnesses the oath in the jury's presence. However, as noted above, Reid has failed to show that any witnesses testified without being "duly sworn," nor has he cited to any authority that requires the court to give witnesses the oath in the jury's presence or that requires the court to inform the jury

---

[52] *Williams v. State*, 277 Ga. 853, 858 (6) (a) (596 SE2d 597) (2004) (citation and punctuation omitted).

31

that the witness has been sworn.[53] Thus, he has not carried his burden of showing that counsel's failure to object in this case constituted deficient performance.[54]

Moreover, Reid failed to assert this ineffective assistance claim in his original motion for new trial or his two amended motions for new trial. A defendant must raise all allegations of ineffective assistance of trial counsel as soon as practicable and, when appellate counsel raises the issue of ineffective assistance in a motion for new trial, any ineffective assistance claims not raised at that time are waived.[55] Consequently, this claim has been waived.

*Judgment affirmed. Doyle, C. J., and Miller, P. J., concur.*

---

[53] See footnotes 30 and 31, supra.

[54] See *Robinson*, 277 Ga. at 75-76 (defendant asserting ineffective assistance must demonstrate both deficient performance and resulting prejudice).

[55] See *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008); see also *Sparks v. State*, 277 Ga. 72, 75 (4) (586 SE2d 645) (2003).