**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 27, 2015**

# In the Court of Appeals of Georgia

A15A1608. PLATT v. THE STATE.

BARNES, Presiding Judge.

This case arises out of a gunfight that resulted in the death of two of the shooters. Based on circumstantial evidence of his role as a party to the crimes that were committed, a jury found James Platt guilty of voluntary manslaughter and other related offenses. Platt filed a motion for new trial, as amended, which the trial court denied. On appeal, Platt challenges the sufficiency of the evidence to support his convictions and contends that the trial court erred by failing to strike a prospective juror for cause. For the reasons discussed below, we affirm.

1. In reviewing Platt's challenge to the sufficiency of the evidence, we ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The jury rather than

this Court "resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts." *Butler v. State*, 284 Ga. App. 802, 803 (644 SE2d 898) (2007). "So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld." *McLeod v. State*, 245 Ga. App. 668, 669 (1) (538 SE2d 759) (2000).

Viewed in this manner, the record shows that on the afternoon of September 28, 2009, Antonio Clark, Jarrett Dixon, and an unidentified third male entered an apartment in Sandy Springs where they engaged in a gunfight with several men, including Delman Higuera-Hernandez, who lived in the apartment, and his associate, Santos Palacios-Vasquez. When the police arrived at the apartment after the gunfight, they found the walls riddled with bullet holes and blood stains inside and outside the apartment. Shell casings from four different types of ammunition were scattered through several rooms. A box of .380 ammunition was in a bedroom closet. Cocaine, digital scales, and other drug-related paraphernalia were in the hallway closet, dining room, and kitchen.

Most of the men involved in the gunfight had fled by the time the police arrived. However, when the police entered the apartment, they discovered the fatally wounded Clark and Palacios-Vasquez on the floor. Clark had been shot in the head

with a .380 caliber pistol and was taken to the hospital, where he died later that evening. Palacios-Vasquez had been shot multiple times, including in the chest with a 5.7 mm pistol, and was pronounced dead at the scene. Dixon was no longer at the apartment when the police arrived, but a blood stain from the hall bathroom was tested and matched his DNA profile.

Defendant Platt was friends with Clark and Dixon, and he lived with Dixon in Decatur. On the day of the gunfight, Clark had been dropped off by his girlfriend at the residence of Platt and Dixon. It is undisputed that Platt was not inside the Sandy Springs apartment later that day when the gunfight occurred. However, the State argued that Platt was an accomplice of Clark, Dixon, and the unidentified third male who had entered the apartment and engaged in the gunfight with Palacios-Vasquez and his associates. The State contended that Platt had provided his Infiniti for use in the encounter and had waited outside the apartment in his silver Grand Prix while the other three men went inside. Because no participants or eyewitnesses to the gunfight testified at trial, the State relied upon circumstantial evidence gathered by the police during their investigation to link Platt to the gunfight, as discussed below.

*Platt's Infiniti at the Apartment.* Clark did not own a car, but would sometimes borrow one of Platt's cars. Platt had an Infiniti sport sedan. After the gunfight, the

police photographed Platt's Infiniti parked outside the Sandy Springs apartment as part of their processing of the crime scene. After connecting the Infiniti to the case and obtaining a search warrant, the police searched the car, which by then had been driven back to Platt's residence, and the police seized a box of 5.7 mm ammunition with blue polymer tips from the glove compartment. The State's expert firearm examiner later testified that blue polymer tips are uncommon in pistol rounds.

Multiple 5.7 mm cartridge cases were recovered from the Sandy Springs apartment. The State's firearm examiner testified that all of the 5.7 mm cartridge cases were shot from the same handgun. Palacios-Vasquez was shot with 5.7 mm ammunition, and the State's forensic pathologist extracted a blue polymer tip from his chest cavity.

*The Apartment Neighbor.* In addition to the Infiniti, Platt had a silver Pontiac Grand Prix. Clark's girlfriend saw the Grand Prix parked outside Platt's residence on the day of the gunfight when she dropped Clark off there.

A neighbor in the same Sandy Springs apartment building was at home later that day when the gunfight occurred. Sometime between 3:30 p.m. and 4:00 p.m., the neighbor recalled hearing "unusually loud thumping or noisy sounds" coming from another apartment followed by loud footsteps on the outside staircase. The neighbor

4

looked out the window and saw two men coming from the direction of the staircase jump into the passenger seats of a silver car that had approached the apartment building at a high rate of speed. Because the windows of the car were tinted, the neighbor was unable to identify the driver, but she was able to generally describe the two men who jumped into the car by race, age, and clothing. The car sped off after picking up the two men.

*The Grady Hospital Surveillance Footage.* The police obtained video surveillance footage from Grady Hospital in Atlanta, which was about 17-18 minutes from the Sandy Springs apartment, that corroborated the testimony of the apartment neighbor. The video footage showed Platt, Dixon, and an unknown male getting out of a silver car, consistent in appearance with a Grand Prix, outside Grady Hospital at 4:08 p.m. Platt and the unknown male are then seen carrying Dixon into the hospital, where he was treated for a gunshot wound to his chest. The appearance of Dixon and the unknown male on the video was consistent with the neighbor's general description of the men who jumped into the silver car outside the apartment.

Platt left the hospital after dropping off Dixon for treatment. A white t-shirt with Dixon's blood on it was later found at Platt's residence when the police executed a search warrant there.

*The Cell Phone Records.* The police obtained cell phone records for several phones associated with the gunfight, including cell phones linked to Dixon and Clark. The records reflected that on the day of the gunfight, Dixon sent a text message to Clark at 3:22 p.m., informing Clark that "we went 2 da apt across da street" and that Clark should meet them there. Then, at 3:41 p.m., Clark sent a text message to Dixon informing him that an "amigo" was "on the steps" and "we right here already." Cell phone tower information for the two phones indicated that the text messages were sent and received in Sandy Springs.

Calls made to and from a prepaid cell phone with the number 404-510-0981 appeared on both Clark and Dixon's cell phone records. Cell phone records for the 404-510-0981 number showed several calls with Clark and Dixon on the day of the gunfight, including a number of calls in quick succession from 3:42 p.m. until 3:51 p.m., the time period when the gunfight occurred.[1]

---

[1] As previously noted, Clark sent a text message to Dixon at 3:41 p.m. informing him of his location, and the Grady Hospital surveillance video showed Platt, Dixon, and the unknown male arriving at the hospital at 4:08 p.m. Because there was testimony that it would take about 17-18 minutes to travel to Grady Hospital from the Sandy Springs apartment, the gunfight would have occurred between approximately 3:41 p.m. and 3:51 p.m.

6

Cell phone tower information for the 404-510-0981 number showed that the holder of the cell phone was in Sandy Springs at the time of the aforementioned calls, and that the phone was pinging off the same cell phone tower as the cell phones of Dixon and Clark. The cell phone tower information further showed that, after the gunfight occurred, the holder of the phone traveled south to the area of Grady Hospital. Additionally, cell phone records for the 404-510-0981 number showed that there were two calls with Platt's girlfriend shortly after 4:00 p.m.

At trial, the State argued that the prepaid cell phone associated with the 404-510-0981 number belonged to Platt. To support its argument, the State relied upon the cell phone tower information and the phone records reflecting calls with Clark, Dixon, and Platt's girlfriend.

Based on the circumstantial evidence of his role in the gunfight, Platt was indicted and tried on two counts of malice murder for the shooting deaths of Palacios-Vasquez and Clark, and two counts of possession of a firearm during the commission of a felony, among other offenses related to the gunfight.[2] At the close

---

[2] Six other co-defendants were indicted for multiple offenses arising out of the gunfight. Dixon was tried with Platt and was convicted of voluntary manslaughter and several other crimes. Dixon is not a party to this appeal. Higuera-Hernandez was tried jointly with another co-defendant and was convicted of malice murder, felony murder, and other offenses. See *Higuera-Hernadez v. State*, 289 Ga. 553 (714 SE2d

of trial, the trial court instructed the jury on the charged offenses and on voluntary manslaughter as a lesser included offense of the malice murder charges. The court also instructed the jury on the law of party to a crime. The jury found Platt guilty of two counts of voluntary manslaughter and of the two firearm possession counts.[3]

(a) Platt contends that the circumstantial evidence was insufficient to support his convictions as a party to the crime of voluntary manslaughter. He maintains that the State's evidence was based "solely on assumptions and inferences" and did not prove that he was "waiting in the parking lot for Dixon, Clark, and the unidentified male." Platt further maintains that even if there was evidence from which a jury could find that he was parked outside the apartment, the evidence showed nothing more than his mere presence at the scene and failed to rule out every other reasonable hypothesis except his guilt. We are unpersuaded.

A jury can find a defendant guilty of voluntary manslaughter

---

236) (2011). Whether and to what extent the remaining co-defendants' cases have been resolved is unclear from the record.

[3] Platt's remaining convictions were merged into the two voluntary manslaughter convictions for sentencing purposes. We do not consider the sufficiency of the evidence with respect to the merged offenses. See *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

OCGA § 16-5-2 (a).

"If, upon a sudden quarrel, the parties agree to a fight, and one of them is killed, such killing is voluntary manslaughter, no matter who strikes the first blow." (Citation and punctuation omitted.) *White v. State*, 179 Ga. App. 276, 277 (1) (346 SE2d 91) (1986). "A mutual intention to fight need not be proved directly, but may be inferred by the jury from the conduct of the parties." (Citations and punctuation omitted.) *Harris v. State*, 183 Ga. App. 219, 220 (1) (358 SE2d 634) (1987). If there is any evidence that both parties were armed and "intended to resolve their differences by fighting each other with deadly weapons," a defendant can be convicted of voluntary manslaughter in lieu of murder. *Sanders v. State*, 283 Ga. 372, 375 (2) (c) (659 SE2d 376) (2008).

Furthermore, "[a] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it." (Citation and punctuation omitted.) *Copeny v. State*, 316 Ga. App. 347, 349 (1) (a) (729 SE2d 487) (2012). See OCGA § 16-2-20 (a).

A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.

(Footnote omitted.) *Dunn v. State*, 248 Ga. App. 223, 224-225 (1) (546 SE2d 27) (2001). See OCGA § 16-2-20 (b). So long as "the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abetter." (Citation, punctuation, and emphasis omitted.) *Copeny*, 316 Ga. App. at 349 (1) (a). Whether a defendant was a party to the charged crime is normally a question for the jury. *Dunn*, 248 Ga. App. at 225 (1).

"Applying these principles, we have held that a getaway driver who waits for his co-defendant to return to the car can be found guilty as a party to the crimes committed by the co-defendant." *Wise v. State*, 325 Ga. App. 377, 380 (1) (752 SE2d 628) (2013). See also *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006) (defendant who waited at scene in a second car and then assisted in escape could be found guilty as a party to the crime). Moreover, a defendant who accompanies a co-defendant to the crime scene and serves as a lookout also can be

10

convicted as a party to the crime, see *Campbell v. State*, 314 Ga. App. 299, 304 (724 SE2d 24) (2012), and evidence that a defendant provided a weapon, ammunition, or other supplies to another party for use in mutual combat can be found guilty as a party to the crime of voluntary manslaughter. See *Mitchell v. State*, 225 Ga. App. 26, 27-28 (1) (482 SE2d 419) (1997).

Construed in the light most favorable to the verdict with all inferences drawn in favor of the prosecution, the combined circumstantial evidence presented by the State in this case reflected that Platt supplied his Infiniti stocked with ammunition for use at the Sandy Springs apartment; accompanied Clark, Dixon, and the unknown male to the apartment in his silver Grand Prix; remained parked outside while maintaining cell phone contact with Clark and Dixon after they and the unknown male went inside the apartment; and served as the getaway driver who facilitated the escape of the wounded Dixon and the unknown male. Based on this circumstantial evidence and the case law previously discussed, we conclude that a rational jury was authorized to find Platt guilty beyond a reasonable doubt as a party to the crime of voluntary manslaughter. *Jackson*, 443 U. S. at 319 (III) (B). The jury reasonably could have inferred that Platt, Clark, Dixon, and the unknown male "were engaged in a common enterprise at the time of the shooting" and that they "shared a criminal

intent with respect to the shooting." *Powell v. State*, 291 Ga. 743, 745 (1) (733 SE2d 294) (2012). See *Wright v. State*, 296 Ga. 276, 277, 284 (3) (766 SE2d 439) (2014) (evidence was sufficient to show that defendant was party to shooting committed by co-defendant, where defendant drove his co-defendants to the scene, communicated with his co-defendants at the scene after they got out of the car, and served as the getaway driver after the shooting); *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006) (evidence was sufficient to support defendant's conviction as party to the crime, where defendant waited at the scene and then assisted his co-defendants in their attempted escape).[4]

While Platt argues that the evidence did not exclude every reasonable hypothesis except his guilt, the circumstantial evidence "need not exclude every *conceivable* inference or hypothesis – only those that are reasonable." (Emphasis in

---

[4] It is true that "driving a criminal perpetrator away from a crime scene with knowledge that he has committed the crime does not, in and of itself, render one guilty as a party to the crime (although it could result in criminal liability as an accomplice after the fact at common law)." *Ratana v. State*, 297 Ga. App. 747, 750 (678 SE2d 193) (2009) (evidence insufficient to support defendant's conviction as party to the shooting of the victim by co-defendant, where defendant drove the co-defendant from the scene after the shooting, but there was no evidence that the defendant had driven the co-defendant to the scene or "did anything on the scene to advise or encourage [the co-defendant] to commit the crimes"). But here, as discussed above, the evidence, construed in favor of the verdict, showed that Platt did more than simply drive the others from the scene after the shooting.

original.) *Merritt v. State*, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009). The totality of the evidence summarized above, although circumstantial, was sufficient to allow the jury to find that every other reasonable hypothesis except the guilt of Platt had been excluded and to convict him of voluntary manslaughter.[5]

(b) Platt further contends that even if he could be found guilty for the voluntary manslaughter of Palacios-Vasquez, he could not be found guilty of the voluntary manslaughter of Clark. Platt emphasizes that Clark was shot and killed by Palacios-Vasquez or one of his associates, rather than by someone with whom Platt was aligned in the gunfight. Again, we find no basis for reversal.

Where there is evidence that the parties mutually agreed to engage in a gunfight to settle a dispute, a rational jury can find that all of the "participants in the gun battle shared a common criminal intent – to assault each other with guns." *Emmanuel v. State*, 300 Ga. App. 378, 380 (1) (685 SE2d 361) (2009), quoting *Taylor v. State*, 296 Ga. App. 212, 213 (1) (a) (674 SE2d 81) (2009). See also *Coe v. State*, 293 Ga. 233,

---

[5] For the same reasons, we conclude that the evidence was sufficient to support Platt's convictions for possession of a firearm during the commission of a felony. "Where a party has possessed a firearm during the commission of a felony, an accomplice who is concerned in the commission of the crime under OCGA § 16-2-20 is likewise guilty of both offenses." (Citations and punctuation omitted.) *Anderson v. State*, 237 Ga. App. 595, 596 (2) (516 SE2d 315) (1999).

13

235 (1) (748 SE2d 824) (2013); *Coker v. State*, 209 Ga. App. 142, 143 (433 SE2d 637) (1993). Given this shared criminal intent, a defendant who was a party to the gun battle can be held criminally liable for a shooting injury or death caused by the battle, even if the shot was fired by an opponent of the defendant. See id. See also *State v. Spates*, 779 N.W.2d 770, 780-781 (Iowa 2010) ("The primary distinction between garden-variety aiding and abetting and mutual-combat aiding and abetting is that the existence of mutual combat provides a factual basis for holding a defendant combatant vicariously liable for the murderous conduct of any other combatant, even an opponent of the defendant.").

A shooting injury or death "caused" by the gun battle means one that was proximately caused by the battle. See *Walker v. State*, 251 Ga. App. 479, 481 (1) (553 SE2d 634) (2001) (applying proximate cause in context of voluntary manslaughter conviction). See also *State v. Jackson*, 287 Ga. 646, 648 (2) (697 SE2d 757) (2010) (noting that "proximate cause is the standard for homicide cases in general"). "Proximate causation imposes liability for the reasonably foreseeable results of criminal conduct if there is no sufficient, independent, and unforeseen intervening cause." (Citation and punctuation omitted.) *State v. Ogilvie*, 292 Ga. 6, 11 (2) (d) (734 SE2d 50) (2012).

14

As already explained, from the circumstances proven in this case, a rational jury could have inferred that Platt aided and abetted the gunfight that occurred in the apartment. Platt thus could be held criminally liable for his friend Clark's death, even if the shot was fired by a rival gang member, so long as the death was proximately caused by the gunfight. See *Coe*, 293 Ga. at 235 (1); *Emmanuel*, 300 Ga. App. at 380 (1); *Taylor*, 296 Ga. App. at 213 (1) (a); *Coker*, 209 Ga. App. at 143. And a rational jury was entitled to find that Clark's death was a reasonably foreseeable result of the gunfight, and thus that proximate causation had been shown. The evidence therefore was sufficient to support Platt's conviction as a party to the voluntary manslaughter of Clark.

2. Platt also contends that the trial court erred by failing to strike a prospective juror for cause. We do not agree.

> Under Georgia law, there is a presumption that potential jurors are impartial, and the burden of proving partiality relies with the party seeking to have the juror disqualified. Furthermore, whether to strike a juror for cause lies within the sound discretion of the trial court, and a trial court is not obligated to strike a juror for cause in every instance in which the potential juror expresses doubts about his or her impartiality or reservations about his or her ability to set aside personal experiences. Indeed, the trial judge is uniquely positioned to observe a potential juror's demeanor and thereby to evaluate his or her capacity to render an

15

impartial verdict. But the trial court must excuse a potential juror for cause based on the juror's partiality, if an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.

(Punctuation and footnotes omitted.) *Wheeler v. State*, 327 Ga. App. 313, 314-315 (1) (758 SE2d 840) (2014).

Here, during voir dire, the prospective juror in question indicated that she was scared of guns. The juror stated that she was unsure if she could overcome her bias because she believed that someone would have a gun only for self-defense or "to hurt somebody," and she did not know any other reason someone would have a gun. When asked if she would find someone guilty just because she did not like guns, the juror responded, "No." The juror then was asked if she would listen to the evidence before finding someone guilty, and she responded:

> I would listen to the evidence. I would love to listen to the evidence, but my question would always be, well, why does this person need a gun. And so I would need to understand that there's a good reason for having a gun, other than saying having to defend somebody, which means hurting somebody else, or I'm going to defend my business, [or] a drug company, by hurting somebody else. We would need to overcome that burden to understand why someone would have one.

Later in her exchange with counsel, the juror stated,

> I think I am capable of coming in and taking instructions of how to view – [the prosecutor] just went through innocent until proven guilty and taking the facts that are in the courtroom and making a decision of those facts presented beyond a reasonable doubt.

The jury also stated that it was her "hope" that she could set her bias aside.

Based on the juror's responses, Platt moved to strike the prospective juror for cause. The State objected, arguing that the juror "was simply being candid" and could be fair and impartial when her comments were viewed in their totality. The trial court agreed with the State and denied the motion to strike. Ultimately, Platt used one of his peremptory strikes to exclude the prospective juror.

A prospective juror's statement that she "hopes" she could decide the case in an unbiased manner based on the trial court's instructions and evidence does not require the juror to be excused. See *Ellis v. State*, 292 Ga. 276, 283-284 (4) (b) (736 SE2d 412) (2013); *Amador v. State*, 310 Ga. App. 280, 281-282 (1) (713 SE2d 423) (2011). See also *Johnson v. State*, 291 Ga. 621, 624 (2) (732 SE2d 266) (2012) ("When a potential juror testifies that he or she will 'try' to decide the case based upon the court's instructions and the evidence, excusing that prospective juror for cause is not mandated."). Furthermore, "it is not an abuse of discretion to seat a juror

17

who questions her ability to set aside biases so long as the juror indicates she has no unalterable fixed prejudices." (Punctuation and footnote omitted.) *Wheeler*, 327 Ga. App. at 316 (1).

Based on the prospective juror's comments, taken as a whole, the trial court was authorized to find that the juror's opinion was not so fixed and definite as to preclude her from service on the jury. The trial court therefore did not abuse its discretion in denying Platt's motion to strike the prospective juror for cause.

*Judgment affirmed. Ray and McMillian, JJ., concur.*